UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland Corporation, | )<br>)<br>) |
| Plaintiff, | ) No. |
| -vs.- | )<br>) |
| EDWARD E. GILLEN COMPANY, a Wisconsin corporation, GARY A. JACKSON, an individual, and JULLANE J. JACKSON, an individual, | )<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

NOW COMES Plaintiff Fidelity and Deposit Company of Maryland ("F&D"), by its undersigned attorneys, and for its Complaint against Defendants Edward E. Gillen Company, a Wisconsin Corporation ("Gillen"), Gary A. Jackson, an individual ("Gary"), and Jullane J. Jackson, an individual ("Jullane"), states as follows:

### THE PARTIES

1. Plaintiff F&D is a Maryland Corporation with its principal place of business located in Schaumburg, Illinois.

2. Defendant Gillen is a Wisconsin Corporation with its principal place of business located in Milwaukee, Wisconsin.

3. Defendant Gary is an individual who resides in Cedarburg, Wisconsin and is a citizen of the State of Wisconsin.

1

4. Defendant Jullane is an individual who resides in Cedarburg, Wisconsin and is a citizen of the State of Wisconsin.

**JURISIDICTION AND VENUE**

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and because the parties are citizens of different states.

6. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted occurred in this judicial district, or, in the alternative, pursuant to 28 U.S.C. § 1391(b)(3) because at least one defendant is subject to the Court's personal jurisdiction with respect to this action.

**FACTS COMMON TO ALL COUNTS**

**The Agreement of Indemnity**

7. F&D, as part of its business, issues surety bonds throughout the United States.

8. On or about April 28, 2009, Gillen, through its then-President Richard C. Zirbel, executed and delivered to F&D a document titled "Agreement of Indemnity" ("AI"), a true and accurate copy of which is attached hereto as **Exhibit A.**

9. Also executing the AI, and thereby agreeing to the terms and conditions thereof, were Gary and Jullane, who, on information and belief, were the owners of Gillen. (Hereafter, Gary and Jullane shall be collectively referred to as "Indemnitors").

10. Although the signatures of Gillen and the Indemnitors bear the date April 28, 2009, the AI provides that it was "made and entered into this 2nd day of February, 2009…"

11. The execution and delivery of the AI by Gillen and the Indemnitors was a condition precedent to F&D's determination whether or not to issue any surety bond requested

by Gillen and formed part of the consideration for F&D's agreement to issue a surety bond for Gillen.

12. Pursuant to the terms and conditions of the AI, Gillen and the Indemnitors, in return for and in consideration of the execution by F&D from time to time of certain bonds as surety for Gillen, agreed to be jointly and severally liable to F&D for losses and expenses sustained or incurred by F&D as a result of issuing surety bonds for Gillen. Gillen and the Indemnitors also agreed to the various terms and conditions of the AI, including, but not limited to, the following relevant provisions:

> "SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) in enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by the Surety. In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety."
>
> "FOURTH: If any of the Bonds are executed in connection with a contract which by its terms or by law prohibits the

assignment of the contract price, or any part thereof, the Contractor and Indemnitors covenant and agree that all payments received for or on account of said contract shall be held as a trust fund in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust."

"NINTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Contractor, and indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts."

"TWENTIETH: The Contractor and Indemnitors hereby agree that their obligation under this Agreement shall apply to any Bonds the Surety executes on behalf of any present or future, directly or indirectly owned subsidiaries or affiliates, and any other legal entities in which the Contractor has an ownership interest including, but not limited to, any corporations, partnerships, limited liability companies (LLC) and joint ventures, whether acting alone or in joint venture with others not named herein. In addition, the Contractors and Indemnitors agree that their obligations under this Agreement shall apply to any Bonds the Surety issues on behalf of any entity upon the written request of EDWARD E. GILLEN COMPANY."

**The Net Worth Retention Agreement**

13. As further inducement to F&D issuing surety bonds, Gillen and the Indemnitors also executed a "Net Worth Retention Agreement". The Net Worth Retention Agreement was expressly incorporated by reference into the AI.

14. The Net Worth Retention Agreement required Gillen to maintain a "Tangible Net Worth" of not less than $7,500,000.00.

15. The Net Worth Retention Agreement defined the term "Tangible Net Worth" to mean "as of any applicable date of determination and as to the Contractor, the excess of (i) the net book value of all assets (other than all items of indebtedness, obligation or liability due from affiliates, including stockholders, and intangible assets) of Contractor after all appropriate deductions (including, without limitation, reserves for doubtful receivables, deferred tax assets, obsolescence, depreciation, and amortization), all as determined in accordance with GAAP, over (ii) all debt of Contractor.

16. The Net Worth Retention Agreement further contains definitions for the terms "DEBT" and "LOSS".

17. The term "DEBT" is defined by the Net Worth Retention Agreement to mean "as of any applicable date of determination and as to the Contractor, all items of indebtedness, obligation or liability of Contractor except items of indebtedness subordinated to Surety, whether matured or unmatured, liquidated or unliquidated, direct or indirect, absolute or contingent, joint or several, that should be classified as liability in accordance with GAAP".

18. The term "LOSS" is defined by the Net Worth Retention Agreement as "an(sic) and all damages, expenses and liabilities of whatever kind, including interest, court costs and

attorney fees which surety may sustain or incur as a result of or in connection with any Bond furnished to Contractor".

19. The Net Worth Retention Agreement also required that Gillen obtain the prior written approval of F&D to make any distributions, pay any dividends, redeem any stock, make any loans, sell any assets or take any other actions other than in the normal operation of its business, if the effect of such distributions, payment of dividends or bonuses, redemption of stock, loans or sale of assets would reduce the Tangible Net Worth below $7,500,000.00.

20. Thereafter, F&D issued, as surety, numerous surety bonds on behalf of or at the request of Gillen, including, without limitation, the 31st Street Bond.

21. Gillen's Tangible Net Worth was less than $7,500,000.00 as of December 31, 2009 and in subsequent years.

22. Gillen's financial statements for the year ended December 31, 2009, audited by Gillen's certified public accountants, reported a Tangible Net Worth, as defined by the Net Worth Retention Agreement, of $1,608,733.

23. Gillen's financial statements for the year ended December 31, 2010, audited by Gillen's certified public accountants, reported a Tangible Net Worth, as defined by the Net Worth Retention Agreement, of a deficit of ($9,543,928).

24. According to tax returns filed by Gillen with the Internal Revenue Service for the year ended December 31, 2011, Gillen's Tangible Net Worth, as defined by the Net Worth Retention Agreement, was reported to be a deficit in the amount of ($19,800,990).

25. In 2012, Gillen sold assets to Michels Corporation when Gillen's Tangible Net Worth was less than $7,500,000.00 without the prior approval of F&D.

**The Norfolk Southern Bond**

26. In reliance upon the AI and the promises contained therein by Gillen and the Indemnitors, on or about May 11, 2010 F&D issued Bond No. PRF 8076302 which named Norfolk Southern Railway Company as Obligee in the penal sum of $1,684,900 for a project known as "Rehabilitation of Concrete Retaining Wall between 51st and 49th Street, Chicago IL" ("Norfolk Southern Bond").

27. F&D received a claim against the Norfolk Southern Bond from Gillen's subcontractor, F.H. Paschen, S.N. Nielsen & Associates, LLC

**The Meyne Supersedeas Bond**

28. On or about October 27, 2010, an arbitration award against Gillen was confirmed in the United States District Court for the Northern District of Illinois, Eastern Division in case no. 10-C-3497, captioned *The Meyne Company, etc. v. Edward E. Gillen Company*.

29. In order to forestall execution on that judgment, Gillen requested that F&D issue a supersedeas bond.

30. In reliance upon the AI and the promises contained therein by Gillen and the Indemnitors, on or about November 3, 2010 F&D issued Bond No. CGB 7619497 in the penal sum of $786,413.45 ("Supersedeas Bond"). The penal sum of the Supersedeas Bond was subsequently increased to $825,496.08 pursuant to a certain "Appeal Dismissal and Forbearance Agreement" effective January 19, 2012 and signed by Gillen and others.

31. Due to Gillen's failure to satisfy its payment obligations as required by the Appeal Dismissal and Forbearance Agreement, F&D was required to and did pay the sum of $825,496.08 in exchange for an assignment of the judgment.

**The 31st Street Bond**

32. In reliance upon the AI and the promises contained therein by Gillen and the Indemnitors and at the request of Gillen, F&D issued Performance and Payment Bond No.8971635 ("31st Street Bond") naming an entity known as "Paschen Gillen Skipper Marine Joint Venture" ("Joint Venture"), as principal, and the City of Chicago Public Building Commission ("PBC"), as obligee, and with Continental Casualty Company and Safeco Insurance Company of America as co-sureties, in the penal sum of $30,316,650.00 for a construction project commonly known as "31st Street Harbor Coastal (Re-Bid)", Contract No. 1502-R" ("31st Street Harbor Project"). Gillen was a member of the Joint Venture.

33. To date, as a result of having issued the 31st Street Bond and acting as co-surety, F&D has been named as a defendant in the following lawsuits currently pending in the Circuit Court of Cook County, Illinois arising out of the 31st Street Harbor Project:

    a. *Central Boat Rentals v. Paschen Gillen Skipper Marine Joint Venture, et al.*, No. 12 CH 35980. The amount claimed is $731,031.24;

    b. *American Marine Constructors, Inc. v. F.H. Paschen, S.N. Nielsen & Associates et. al.*, No. 12 CH 35905. The amount claimed is $148,074.06;

    c. *Basic Towing, Inc. v. Paschen Gillen Skipper Marine Joint Venture, et al.*, No. 2012 CH 22630. The amount claimed is $83,057.77.

    d. *Edward E. Gillen Co. v. Paschen/Gillen/Skipper, JV, et al.*, No. 12 CH 36178. The amount claimed is $10,000,000.00;

    e. *Finkbiner Equipment Company v. Paschen Gillen Skipper Marine Joint Venture, et al.*, No. 12 CH 26094. The amount claimed is $94,862.11;

f.  *Growmark Inc., v. Edward E. Gillen Company et. al.*, No. 12 CH 34829. The amount claimed is $177,662.06;

g.  *John Sakash Company, Inc. v. Paschen Gillen Skipper Marine Joint Venture et. al.*, No. 12 CH 28790. The amount claimed is $85,620.99;

h.  *Kiel Sand & Gravel v. DHL Construction et. al.*, No. 12 CH 16709. The amount claimed is $481,174.56;

i.  *Kindra Lake Towing, LP v. Paschen Gillen Skipper Marine Joint Venture et. al.*, No. 12 CH 17679. The amount claimed is $885,451.89;

j.  *Kindra Marine Terminal v. Chicago Park District et. al.*, No. 2012 CH 17668. The amount claimed is $20,773.45;

k.  *King LLC v. Paschen Gillen Skipper Marine Joint Venture et. al.*, No. 12 CH 25747. The amount claimed is $150,255.38;

l.  *KK Integrated Logistics v. Public Building Commission of Chicago et. al.*, No. 12 CH 09167. The amount claimed is $515,838.06;

m.  *Lannon Stone Products, Inc. v. DLH Construction and Trucking, Inc. et. al.*, No. 12 CH 16705. The amount claimed is $312,453.97;

n.  *Midwest Operating Engineers Welfare Fund of Local 150 v. Paschen, Gillen, Skipper et. al.*, No. 12 CH 30599. The amount claimed is $363,592.80;

o.  *Operating Engineers Local 139 v. Continental Casualty Company et. al.*, No. 12 CH 42085. The amount claimed for Local 139 Funds is $62,709.16. The amount claimed for the Local 324 benefit funds is $11,009.50;

p. *Super Excavators, Inc. v. DLH Construction and Trucking, Inc. et. al.*, No. 12 CH 16703. The amount claimed is $214,440.37;

q. *American State Equipment v. Chicago Park District et. al.*, No. 2012 CH 26089. The amount claimed is $147,258.68;

34. To date, as a result of having executed bonds as surety for Gillen or at the request of Gillen, F&D has paid claims totaling $1,089,676.24.

35. To date, as a result of having executed bonds as surety for Gillen or at the request of Gillen, F&D has been named as a party defendant in 17 separate lawsuits which are currently pending in which in excess of $14,000,000.00 in damages is sought from F&D.

36. To date, as a result of having executed bonds as surety for Gillen or at the request of Gillen, F&D has paid consulting and accounting expenses, and attorney's fees, costs and expenses, in the amount of $89,850.27. F&D reasonably expects that it will continue to incur and pay attorney's fees, costs and expenses as a result of having executed bonds as surety for Gillen or at the request of Gillen.

## **COUNT I (BREACH OF INDEMNITY AGREEMENT)**

37. F&D reasserts and realleges paragraphs 1 through 29 of its Complaint as if fully restated herein as Paragraph 30 of Count I.

38. As a result of execution of the bonds and as a result of paying claims asserted against the bonds, F&D has incurred losses and expenses, and expects to incur additional losses and expenses, including attorneys' fees, for which Gillen and the Indemnitors are required to indemnify F&D pursuant to the terms of the AI.

39. As a result of the execution of the bonds, F&D has been required to post loss and expense reserves in the amount of approximately $143,000.00 as a result of claims asserted against the Bonds issued for Gillen.

40. Additionally, F&D has incurred and will continue to incur losses, interest, expenses and attorneys' fees in the enforcement of its rights under the AI.

41. Gillen and the Indemnitors are required to reimburse F&D for the amount of all such losses, interest and expenses incurred pursuant to the terms and conditions of the AI.

42. To date, Gillen and the Indemnitors' have not reimbursed and indemnified F&D, which constitutes a breach of the AI by the Indemnitors.

43. As a result of the breach, F&D has to date sustained damages in the amount of $1,179,526, exclusive of interest and costs.

WHEREFORE, the Plaintiff, Fidelity and Deposit Company of Maryland, prays that this Court grant the following relief:

A. That judgment be entered in favor of F&D and against Gillen and the Indemnitors, jointly and severally, in the amount of all losses sustained and expenses incurred by F&D to date, including, but not limited to, interest, expenses, costs and attorneys' fees as a result of issuing the bonds;

B. That the Court order Gillen and the Indemnitors immediately and specifically to perform their obligations under the AI to fully and completely indemnify F&D for all losses, interest, costs, expenses and attorneys' fees incurred by F&D and that will continue to be incurred as required by paragraph SECOND of the Indemnity Agreement; and

C. Award such other and further relief to F&D as this Court deems appropriate.

## COUNT II (DUTY TO USE AND ACCOUNT FOR CONTRACT PAYMENTS)

44. F&D reasserts and realleges paragraphs 1 through 28 of the foregoing Facts Common to All Counts as if fully restated herein as Paragraph 36 of Count II.

> Pursuant to the terms of the AI, Gillen and the Indemnitors agreed to exonerate and keep indemnified F&D from and against any claims made against the bonds executed by F&D for Gillen or at the request of Gillen. Furthermore, pursuant to paragraph FOURTH of the AI, Gillen and the Indemnitors agreed that:
>
> ...it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.

45. Pursuant to F&D's rights under the AI, F&D is entitled to have Gillen and the Indemnitors acknowledge and admit that all monies due from contracts bonded by F&D for or at the request of Gillen are trust funds which may only be used to pay obligations for which F&D would be liable under the bonds it executed for or at the request of Gillen and for no other purpose.

46. Under the terms of the AI, the Indemnitors are required to provide an accounting to F&D of all monies which have been collected and disbursed by Gillen and/or the Indemnitors on contracts bonded by F&D from February 2, 2009 to the present.

WHEREFORE, the Plaintiff, Fidelity and Deposit Company of Maryland, prays that this Court grant the following relief:

A. That the Court order Gillen and the Indemnitors to admit and acknowledge that all monies paid to Gillen from contracts bonded by F&D are trust funds which may only be used to pay obligations for which F&D would be liable under the Bonds it executed for or at the request of Gillen, and for no other purpose;

B. That the Court order Gillen and the Indemnitors to immediately and specifically perform their obligations under the AI to provide an accounting to F&D of all monies which have been collected and disbursed by Gillen and the Indemnitors on contracts bonded by F&D for or at the request of Gillen from February 2, 2009 to the present as required by paragraph FOURTH of the Indemnity Agreement; and

C. Award such other and further relief to F&D as this Court deems appropriate.

## COUNT III (AGAINST GARY AND JULLANE)

40. F&D adopts and incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1-28 of the foregoing Facts Common to All Counts as if fully restated herein as Paragraph 40 of Count III.

41. Pursuant to terms of the AI and Net Worth Retention Agreement, "the indemnity and exoneration afforded to the Surety by Gary A. Jackson and Jullane J. Jackson (individually and collectively, the contingent indemnitors) pursuant to this Agreement is specifically limited to the full extent of any funds or assets of the Contractor received by them as a result of distributions, payments of dividends or bonuses, redemptions of stock, loans or sale of assets which reduced TANGIBLE NET Worth below that as set forth above, said funds to be held in trust for reimbursement of Surety's Loss".

42. Gary received cash distributions from Gillen in an amount in excess of $500,000.00 when Gillen's Tangible Net Worth was less than $7,500,000.00.

43. Gillen made such distributions to Gary without the prior approval of F&D.

44. F&D has sustained a loss as a result of having issued bonds as surety for or at the request of Gillen.

WHEREFORE, the Plaintiff, Fidelity and Deposit Company of Maryland, prays that this Court grant the following relief:

A. That the Court enter judgment against Gary and Jullane, jointly and severally, in the amount of distributions made to either of them by Gillen since February 2, 2009;

B. That the Court order that all distributions received by Gary or Jullane from Gillen are to be held in trust for F&D for reimbursing F&D for its losses and are to be promptly paid over to F&D for that purpose;

C. That the Court order Gary and Jullane to provide an accounting all of cash, cash equivalents and assets distributed, paid, assigned or transferred to him by Gillen after February 2, 2009; and

**D.** Award such other and further relief to F&D as this Court deems appropriate.

## COUNT IV (*QUIA TIMET* AND EXONERATION)

45. F&D adopts and incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1-28 of the foregoing Facts Common to All Counts as if fully restated herein as Paragraph 45 of Count IV.

46. Gillen and the Indemnitors are obligated by the AI and the common law to protect, indemnify and exonerate F&D from all claims, demands and judgments against F&D as a result of its having issued the bonds as surety for or at the request of Gillen.

47. Gillen and the Indemnitors have failed to resolve the claims, demands and judgments made against F&D as a result of its having issued the bonds as surety for or at the request of Gillen.

48. The claims asserted against F&D's bonds have become or will become due in the future.

49. F&D has already paid claims and fears that when the current and future claims that are asserted against its bonds become due, F&D may be liable for those claims.

50. F&D will be prejudiced if it is required to advance its own funds to various claimants when it is the primary obligation of Gillen and the Indemnitors to do so.

51. F&D has incurred costs, attorney fees and other expenses as a result of its having issued the bonds; and will continue to incur such cost, fees and expenses until the resolution of Gillen and the Indemnitors' obligations to F&D on the bonds.

WHEREFORE, the plaintiff Fidelity and Deposit Company of Maryland prays that this Honorable Court:

A. Enter an order requiring Gillen and the Indemnitors to exonerate F&D from its obligations under the bonds issued for or at the request of Gillen by requiring Gillen and the Indemnitors to immediately satisfy all claims now pending;

B. In the alternative, enter an order requiring Gillen and the Indemnitors to immediately furnish F&D with collateral in the amount of $14,000,000.00 in cash or cash equivalents in order to secure F&D against any and all losses and expenses, including attorney's fees that it may sustain or incur as a result of issuing the bonds as surety for or at the request of Gillen;

C. Enter an order requiring Gillen and the Indemnitors to immediately satisfy any and all other existing obligations that F&D has or may have under the bonds issued for or at the request of Gillen; and

D. Award F&D such further relief as this court deems appropriate.

**COUNT V (REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION)**

52. F&D adopts and incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1-28 of the foregoing Facts Common to All Counts as if fully restated herein as Paragraph 52 of Count V.

53. F&D believes that Gillen and the Indemnitors have adequate and substantial assets available to reimburse F&D for any losses and expenses which F&D has sustained or incurred or which it may incur in the future, as a result of its having issued the bonds for or at the request of Gillen. To date, Gillen and the Indemnitors have not honored their obligation to exonerate, indemnify and sufficiently collateralize F&D from and against the claims under the bonds.

54. Pursuant to the terms and conditions of the AI executed by Gillen and the Indemnitors, Gillen and the Indemnitors agreed to exonerate, indemnify and hold F&D harmless from and against any amount, claims, demands and judgments asserted against F&D as a result of any bonds that F&D issued as surety for or at the request of Gillen.

55. Gillen and the Indemnitors' breach of the AI has impaired and continues to impair F&D's ability to secure and obtain exoneration. Unless Gillen and the Indemnitors are enjoined from disposing of their assets or unless the net proceeds of any disposition of their assets are segregated and set aside for the protection of F&D, F&D will sustain immediate and irreparable harm.

56. The entry of a money judgment in favor of F&D at some time in the future provides no adequate remedy whatsoever.

57. Further, the requirement that Gillen and the Indemnitors presently collateralize F&D obligations as a result of its having issued the bonds can only be enforced and satisfied by equitable means.

58. F&D is likely to prevail on its complaint against Gillen and the Indemnitors.

59. There are no public policy concerns which would outweigh the grant of injunctive relief in favor of F&D and against Gillen and the Indemnitors under these facts.

WHEREFORE, plaintiff Fidelity and Deposit Company of Maryland prays that this Honorable Court:

A. Issue a preliminary and permanent injunction restraining Edward E. Gillen Company, Gary A. Jackson and Jullane J. Jackson from disposing of any of their assets, whether individually owned or in the name of a limited liability company, partnership, corporation controlled or owned by them, including their real property, personal property and equipment, unless the net proceeds of any such disposition, after payment of all prior perfected lien holders on the assets conveyed, are deposited in an interest bearing escrow account for the protection of F&D, and the final determination of F&D's rights to those proceeds;

B. Issue a preliminary and permanent injunction restraining Edward E. Gillen Company, Gary A. Jackson and Jullane J. Jackson from violating the collateral deposit provision of the Indemnity Agreement and requiring that they use any and all assets at their disposal to set aside and pay any obligations for which F&D would be liable under the bonds it executed for Indemnitors;

C. Order that Edward E. Gillen Company, Gary A. Jackson and Jullane J. Jackson provide an accounting for the sources and uses of funds received and disbursed on the project for which bonds were issued and claims asserted; and

D. Award F&D such further relief as deemed appropriate under the circumstances.

## COUNT VI - ACCESS TO BOOKS AND RECORDS

60. F&D reasserts and realleges paragraphs 1 through 28 of the foregoing Facts Common to All Counts as if fully restated herein as Paragraph 60 of Count VI.

61. Pursuant to the terms of the AI, Gillen and the Indemnitors agreed to provide reasonable access to F&D to the books, records and accounts of Gillen and the Indemnitors. Such access is necessary in order for F&D to ascertain its liabilities, if any, under the bonds it executed for or at the request of Gillen, and to enforce all of its rights under the AI against Gillen and the Indemnitors.

62. As part of the relief requested in other Counts of this Complaint, F&D needs access to all of the books, records and accounts of Gillen and the Indemnitors, and requests that this Court require Gillen and the Indemnitors to specifically perform their obligations pursuant to paragraph NINTH of the AI.

WHEREFORE, the Plaintiff, Fidelity and Deposit Company of Maryland, requests that this Court enter an Order:

A. requiring Defendants to specifically perform immediately the requirement of the Indemnity Agreement that they provide to F&D the right to reasonable access to the books, records and accounts of Gillen and the Indemnitors, and

B. Award such other and further relief as is appropriate under the circumstances.

Dated:  November 14, 2013                     FIDELITY AND DEPOSIT COMPANY OF MARYLAND

By: /s/ *Harold E. McKee*
　　Cornelius F. Riordan (IL ARDC #2342634)
　　Email: criordan@rmp-llc.com
　　Harold E. McKee (IL ARDC #6195920)
　　Email: hmckee@rmp-llc.com
　　Megan M. Burke (IL ARDC #6308670)
　　Email: mburke@rmp-llc.com
　　*Attorneys for Plaintiff*
　　RIORDAN MCKEE & PIPER, LLC
　　20 N. Wacker Dr., Ste.910
　　Chicago, Illinois 60606
　　Tel:     (312) 663-9400
　　Fax:    (312) 663-1028