# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**FIDELITY AND DEPOSIT COMPANY
OF MARYLAND,**
      Plaintiff,

    v.                                              Case No. 13-C-1291

**EDWARD E. GILLEN COMPANY, et al.,**
      **Defendants.**

## DECISION AND ORDER

In this decision and order, I address a motion to quash several subpoenas that the defendant, Edward E. Gillen Company ("Gillen"),[1] served on third parties who I will refer to as "Paschen LLC" and the "Paschen Gillen Joint Venture" (or just "Joint Venture").[2]

The complaint in this case was filed by the Fidelity & Deposit Company of Maryland ("Fidelity"), which issued a surety bond relating to a construction project involving a marina and related structures in Chicago, Illinois. The entity responsible for building the marina was the Paschen Gillen Joint Venture, of which the defendant in this case, Gillen, was a member. Gillen was also a subcontractor that performed work on the project. The bond named the Joint Venture as the principal and the City of Chicago Public Building Commission ("PBC") as the obligee. In its complaint, Fidelity alleges that it issued the bond, along with other surety bonds, at Gillen's request. Prior to doing so, Fidelity required

---

[1] There is more than one defendant, but for purposes of this motion the other defendants can be disregarded.

[2] Gillen also served subpoenas on two officers of Paschen LLC, and these officers have joined the motion to quash. For purposes of the motion, I will treat Paschen LLC and its officers as a single entity.

Gillen to execute two documents containing provisions that protected Fidelity's interests. The first document, entitled "Agreement of Indemnity," requires Gillen to indemnify Fidelity for any losses incurred as a result of its having issued surety bonds at Gillen's request, whether or not Fidelity had already paid those losses. The agreement also provides that when liability is asserted against Fidelity, but Fidelity has not yet been found liable or paid a claim, Gillen must make a payment to Fidelity equal to the amount of the reserve set by Fidelity for the claim. The second document is entitled "Net Worth Retention Agreement," and it requires Gillen to maintain a minimum net worth of $7.5 million while Fidelity's bonds are in effect.

In its complaint, Fidelity alleges that, as a result of its having issued the marina bond, it has been named as a defendant in various lawsuits that are now pending in Illinois state court. Fidelity alleges that the total dollar amount of the claims asserted against it in those lawsuits is $14,485,266. Fidelity also alleges that it has already paid about $1 million in connection with Gillen surety bonds, that it has incurred about $300,000 in costs, expenses and attorneys' fees, and that it has set a reserve of $143,000 in connection with the claims involving Gillen. Fidelity alleges that Gillen is liable for these amounts under the indemnity agreement and that Gillen has breached the agreement by refusing to pay. Fidelity also alleges that under the indemnity agreement and the common law, Gillen is required to protect Fidelity from having to pay additional amounts in connection with the more than $14 million in pending claims by either satisfying those claims immediately or posting $14 million in collateral with Fidelity. Finally, Fidelity alleges that Gillen has breached the net-worth agreement because its current net worth is below $7.5 million.

In the course of discovery, Gillen served subpoenas on Paschen LLC and the Joint Venture under Federal Rule of Civil Procedure 45. The subpoenas call for depositions and document productions. Paschen LLC and the Joint Venture have filed the present motions to quash, arguing, among other things, that the subpoenas seek information that is irrelevant to this case. If it is true that the subpoenas seek irrelevant information, then they should be quashed, as they would subject Paschen LLC and the Joint Venture to an undue burden. See Fed. R. Civ. P. 45(d)(3)(A)(iv); CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 993 (7th Cir. 2002) (subpoena seeking irrelevant information imposes an undue burden).

Gillen contends that the information targeted by the subpoenas is relevant to three issues: (1) whether it is true that third parties have asserted $14 million in claims, rather than some lesser amount, against Fidelity as a result of Fidelity's having issued the bond; (2) the amount of "set-offs" that Fidelity has already "exercised for protection"; and (3) whether the Joint Venture "diverted" certain payments intended to satisfy Gillen's obligations. See Gillen Br. in Opp. at 4.

The first of the issues identified by Gillen is clearly an issue in the present case, as some of the relief Fidelity requests is tied to the amount of outstanding claims against it. However, Gillen has not provided a cogent explanation of how the information sought by its subpoenas is relevant to this issue. Fidelity does not allege that Paschen LLC or the Joint Venture have asserted claims against Fidelity; rather, it alleges that the claims have been asserted by Gillen's subcontractors. Thus, to determine the amount each subcontractor has demanded from Fidelity, Gillen should look to the subcontractors. Alternatively, Gillen could ask Fidelity to produce the information it used to determine that the subcontractors have demanded $14 million in damages. But Paschen LLC and the

Joint Venture are not likely to have information about the subcontractor's demands, and Gillen has not explained how any questions that it would ask the movants or how any documents in their possession would shed light on the amount of the subcontractors' demands.

The second of Gillen's issues relates to the amount of "set-offs" that Fidelity has "exercised for its protection." I am not sure what Gillen means by this. It appears to have something to do with funds held by various third parties which are owed to Gillen. In any event, Gillen does not claim that the funds are in the movants' possession or otherwise explain how the information sought by the subpoenas is relevant to this issue.

The remaining issue relates to Gillen's contention that the Joint Venture has "diverted" certain payments that should have been used to satisfy Gillen's obligations to its subcontractors. Again, Gillen has failed to explain how this issue is relevant to the claims asserted by Fidelity. If it is true that the Joint Venture has diverted payments that should have been used to pay Gillen's subcontractors, then this might explain <u>why</u> the subcontractors have asserted claims against Fidelity. But as far as I can tell, the parts of the indemnity agreement that Fidelity seeks to enforce are triggered when claims are asserted against the bond or Fidelity fears that claims will be asserted against the bond. Nothing in the agreement turns on the reason the claims have been asserted or might be asserted. Gillen states that Fidelity "stands in the Joint Venture's shoes" and that its rights are "limited" by the fact that the Joint Venture diverted payments intended for Gillen. <u>See</u> Br. in Opp. at 4. I don't know what Gillen means by this, and Gillen has not cited any authority indicating that the Joint Venture's wrongdoing could be imputed to Fidelity or that its alleged diversion could otherwise affect Fidelity's rights. Thus, I can identify no basis

4

for allowing Gillen to take discovery on this question from Paschen LLC or the Joint Venture.

For these reasons, I conclude that Gillen's subpoenas seek irrelevant information and would subject Paschen LLC and the Joint Venture to an undue burden. Accordingly, **IT IS ORDERED** that the motions to quash are **GRANTED**.

Dated at Milwaukee, Wisconsin, this 28th day of January, 2015.

                                           s/ Lynn Adelman
                                           _____
                                           LYNN ADELMAN
                                           District Judge