UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FIDELITY AND DEPOSIT COMPANY
OF MARYLAND,

        Plaintiff,

  v.

EDWARD E. GILLEN COMPANY, GARY A.
JACKSON, JULLANE J. JACKSON, and
DLH CONSTRUCTION AND TRUCKING, INC.,

        Defendants.

Case No. 13-CV-1291

# DEFENDANT EDWARD E. GILLEN COMPANY'S RESPONSE TO FIDELITY AND DEPOSIT COMPANY OF MARYLAND'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant Edward E. Gillen Company, by its attorneys, Halloin Law Group, S.C., submits the following as its response to Fidelity and Deposit Company's Proposed Statement of Undisputed Material Facts.

1. The following Cook County Payment Bond Lawsuits remain pending:

    a. *American Marine Constructors v. Paschen Gillen Skipper Marine Joint Venture, et. al.,* Cook County Case No. 12-CH-35904.

    b. *Basic Towing, Inc. v. Paschen Gillen Skipper Marine Joint Venture, et. al*, Cook County Case No. 12-CH-22630;

    c. *Central Boat Rentals, Inc. v. Paschen Gillen Skipper Marine Joint Venture, et. al.,* Cook County Case No. 12-CH-35980;

    d. *Kiel Sand & Gravel v. DLH Construction, et al.,* Cook County Case No. 12-CH-35980;

  e. *Kindra Lake Towing, LP v. Paschen Gillen Skipper Marine et al.,* Cook County Case No. l2-CH-17679; *and*

  f. *Kindra Marine Terminal v. Chicago Park District, et al.,* Cook County Case No. 12-CH-17668.

(Defendants Statement of Facts, ¶64 (DN 138).

**Answer:** Admit that there are six payment bond lawsuits, styled as listed above. However, the case number for *American Marine Constructors v. Paschen Gillen Skipper Marine Joint Venture, et. al.*, is Cook County case number 12-CH-35905. Additionally, the case number for *Kiel Sand & Gravel v. DLH Construction, et al.* is Cook County case number 12-CH-16709.

  2. The following are the amounts claimed against the 3lst Street Payment Bond in each of those lawsuits:

  a. American Marine Constructors, Inc. ($148,074.06);

  b. Basic Towing, Inc. ($33,057.77);

  c. Central Boat Rentals, Inc. ($731,031.24);

  d. Kiel Sand & Gravel, Inc. ($481,194.56);

  e. Kindra Lake Towing, L.P. ($885,451.89); and

  f. Kindra Marine Terminal, Inc. ($20,773.45).

(Defendant's Statement of Facts, ¶65 (DN 138).

**Answer:** Admit, in part. American Marine had a contract with Paschen Gillen Skipper Maine Joint Venture for work after January 5, 2012 and it appears that this claim is against the Paschen Gillen Skipper Marine Joint Venture. (*See* Gillen's response to F&D's Proposed Fact number 15, below.)

2

3. In the case of *Kindra Lake Towing, L.P., et al. v. Paschen Gillen Skipper Marine Joint Venture, et al.,* Circuit Court of Cook County, No. 12 CH 17679 in which Gillen is a named defendant, Gillen, under oath, admits that the plaintiff in that case, Kindra Lake Towing, L.P. ("KLT") entered into a purchase order with DLH Construction and Trucking, Inc. ("DLH") [formerly a defendant in this action] dated May 13, 2010. Exhibit 1 to the Affidavit of Cornelius F. Riordan ("Riordan Aff."), ¶32, p.11.

**Answer**: Admit.

4. Gillen further admits that KLT "has provided services to Gillen's subcontractor [DLH] in at least the sum of Eight Hundred Eight-two (sic) Thousand Six Hundred Thirty and 09/100 ($882,30.09) for which Kindra Lake has not been paid." *Id.* at ¶¶34, p. 12, ¶36, p. 13.

**Answer**: Admit that Kindra Lake has provided services to DLH in the amount of $882,630.09. Kindra Lake's claim is also subject to counterclaims, for which set-off has been applied. (*See* Halloin Aff., Exs. A and B.) Further, Gillen has asserted that as a fourth-tier subcontractor Kindra is unable to make a claim against the bond. (Halloin Aff., Ex. C at p.5.) The set-offs and counterclaims are discussed in detail in Halloin Affidavit Exhibits D and E, at p.2–7.

By way of further answer, Gillen incorporates the two following "General Responses" to each following proposed finding of fact.

First, this lawsuit relates to a number of third and fourth tier subcontractor bond claims relating to the 31st Street Breakwater project in Chicago, Illinois.

3

(Halloin Aff., at p.1–2.) The general contractor for the project was Paschen Gillen Skipper Marine Joint Venture. Edward E. Gillen Company ("Gillen") was its subcontractor, and DLH Construction & Trucking, Inc. ("DLH") was Gillen's sub-subcontractor. (Halloin Aff., at p.1–2.) Gillen and DLH have filed claims in Cook County Circuit Court case number 12-CH-417 asserting that the general contractor for the project, Paschen Gillen Skipper Marine Joint Venture, misappropriated funds from draw requests 14–18 submitted to the owner, the Public Building Commission of Chicago, that were otherwise due these third and fourth tier subcontractors (whose claims are at issue in the Eastern District of Wisconsin action). (Halloin Aff., at p.1–2.) Thousands of pleadings have been filed in Cook County case number 12-CH-417 and the consolidated cases. (Halloin Aff., at p.1–2.) Each third and fourth tier subcontract bond claim has specific affirmative defenses unique to the claim, as detailed in this affidavit, and these claims have been consolidated with Circuit Court case number 12-CH-417. (Halloin Aff., at p.1–2.) In addition, Gillen and DLH have globally asserted (1) pay-when-paid defenses to each of the third and fourth tier subcontractor claims; and (2) and that marine work is not lienable or subject to bond claims under Illinois law. (Halloin Aff., at p.1–2.) In addition, DLH asserts that fourth tier subcontractors cannot assert bond claims under Illinois law. (Halloin Aff., at p.1–2.)

Second, Jullane Jackson's September 30, 2016 Deposition in the Consolidated Cook County Cases was taken as part of Gillen's Global Motion for Summary Judgment and related to payments to be made under a mediated settlement

4

negotiated in the case which needed to be confirmed by the judge handling case number 12-CH-417. (Halloin Aff., at p. 4–5.) No deposition discovery on the merits of the subcontractor lien and bond claims has been taken in the consolidated Cook County cases. (Halloin Aff., at p. 4–5.)

5. Gillen further admits that under an oral agreement between KLT and Gillen, Gillen provided "labor, materials, facilities, and services to water vessels for use in the constriction of the 31st Street Project and that KLT provided services to DLH under the oral agreement in the sum of $2,821.80 for which KLT has not been paid. *Id.* at ¶35, 36, pp.12-13.

**Answer:** Admit that Kindra Lake provided services to DLH in the sum of $2,821.80 for which Kindra has not been paid. PGSM JV set off against this sum, and DLH's purchase order has a pay when paid clause. Kindra Lake's claim is to also subject to counterclaims, for which set-off has been applied. (Halloin Aff., Ex. E at p.2–7 and p.16.) By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

6. Gillen repeated its answers to paragraphs 32 and 34 of the general allegations in Count II, KLT's claim under the 31st Street Payment Bond. *Id.* at ¶¶32, 34 (Count II), p. 18.

**Answer:** Admit. By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

7. Gillen further admits that it was served with a copy of the Notice of Lien of KLT in the amount of $882,630.09. *Id.* ¶35, pp. 14-15.

5

**Answer:** Admit. By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

8. Jullane Jackson gave a deposition as the corporate designee of Gillen in the case of *Paschen Gillen Skipper Marine Joint Venture v. Edward E. Gillen Co.*, Circuit Court of Cook County, No. 12 CH 417 on September 30, 2016. Jackson Dep., p. 9. Riordan Aff. Exhibit 2.

**Answer:** Admit that on September 30, 2016 Jullane Jackson was deposed as the corporate designee of Gillen in the matter styled *Paschen Gillen Skipper Marine Joint Venture v. Edward E. Gillen Co.*, but deny that exhibit 2 is a complete copy of the transcript. Pages, such as 34–37 appear to be missing from the referenced exhibit. A complete copy of the transcript is attached as Halloin Affidavit Exhibit M. This deposition was taken as part of Gillen's and DLH's Memorandum in Support of Its Global Motion for Summary Judgment relating to the settlement, attached as Halloin Affidavit Exhibit H. Ms. Jackson's testimony was rendered in light of the proposed settlement. As is clear from the transcript, she believed Gillen had defenses to the claims, and statements relating to payment are payment of settlement proceeds. By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

9. During her deposition, Ms. Jackson testified that KLT performed its work under the subcontract with DLH and that KLT is owed the amount it liened, i.e., ($882,630.09. *Id.* at pp. 45:9-16, 46 8-12. She also testified, "They [KLT] deserve to get paid. They did the work....They should get paid." *Id.* at p.47: l-6.

6

**Answer:** Admit that KLT performed its work under the subcontract in the amount of $882,630.09, but deny that Gillen has admitted that it should pay KLT. As summarized at the end of Jullane Jackson's deposition, "And I guess the only point that I'm trying to make is that ultimately our concern is, when Paschen verified to the PBC that this work was done, these people should be paid, because Paschen took the money, and that's not right." (Halloin Aff., Ex. M, Jullane Jackson 09/30/16 Dep., 133:10–14.)

In its Response to Kindra Lake's Motion for Summary Judgment, Gillen asserted that Kindra Lake Towing is not capable of making a bond claim because it is a fourth-tier subcontractor. (Halloin Aff., Ex. C at p.5.) This motion is currently pending before Judge Anthony Kyriakopoulos.

Gillen has also asserted that it has a set-off against any amount owed to Kindra related to property damage caused to barges that were damaged while in the care of Kindra. (Halloin Aff., Exs. D and E, p.2–7.) In sum, Kindra was responsible for three barges which were tied up in the South Slip of Calumet Harbor on December 11 and 12, 2010. In heavy weather on December 12, 2010, the barges broke away. One barge collided with a docked hopper barge, and the two others were set adrift and ran aground on the Horseshoe Casino Beach and Breakwater. Insurance claims were made, but Gillen was not fully reimbursed for the damage to the vessels that had been left in Kindra's care. The total damage, less an insurance recovery credit, is $988,431.84. (Halloin Aff., Exs. D and E p.2–7.) By way of

further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

10. In the case of *Kindra Marine (sic) Terminal, Inc., et al. v. Paschen Gillen Skipper Marine Joint Venture, et al.,* Circuit Court of Cook County, No. 12 CH 17668 in which Gillen is a named defendant, Gillen, under oath, admits that the plaintiff in that case, Kindra Marine Terminal, Inc.. ("KMT") provided labor, material and facilities for use in construction of the 31st Street Harbor Project under a verbal agreement with Gillen, which was amended from time to time, Gillen's Verified Answer to KMT's complaint filed on June 11, 2012, ¶, p. 4. Riordan Aff., Exhibit 3.

**Answer:** Kindra Marine Terminal is a related entity of Kindra Lake Towing and this matter is being litigated by its counsel in an informal consolidation with *Kindra Lake Towing, L.P., et al. v. Paschen Gillen Skipper Marine Joint Venture, et al.,* Circuit Court of Cook County, No. 12 CH 17679. As Gillen points out in its discovery answers, Kindra Marine Terminal and Kindra Lake Towing are operated by the same persons, and Gillen is unaware of any distinction. (Halloin Aff., Ex. F at p.2–7.) As such, it is asserting the same defenses and claims as in 12-CH-17679 as discussed above in response to F&D's Proposed Fact number 9. By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

11. Gillen further admits that KMT provided services in the sum of at least $20,773.45. *Id.* at ¶9.

8

**Answer:** Admit in part. Gillen does not know if the services were provided by Kindra Lake Towing or Kindra Marine Terminal. (*See* response to proposed finding no. 10.). By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

12. KMT served a Notice of Lien upon Gillen in the mount of $20,773.45. *Id.* at ¶11, pp. 5-6.

**Answer:** Admit. By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

13. Gillen repeated the foregoing answers in the claim asserted by KMT under the payment bond furnished for the 31st Street Project. *Id.* t pp. 7-8

**Answer:** Admit. By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

14. In her deposition, Ms. Jackson admitted that KMT is owed the amount that it liened, i.e., $20,773.45. Riordan Aff. Exhibit 2, pp. 48:23-25, 49:1

**Answer:** *See* response to proposed finding of fact no. 9. By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

15. With respect to the claim of American Marine Construction in Cook county Case No. l2 CH 35904, Ms. Jackson testified as follows in her deposition:

> "Q   So that sounds like you're not willing to admit that you owe American Marine] the money?
>
> A   Once again, I don't have a crystal ball. I don't know what we're going to do in the future. What you can prove and what you think are oftentimes two

> different things. As it stands, if you ask me today, do I - do I think Gillen owes {American Marine} this money, I would say that I would have to look at it closer and look at all of the discovery, but certainly we think there are problems with the work {American Marine} did. So there are disputes that we would have to get to the bottom of."

*Id.*at p.28: 3-14.

**Answer:** Admit. As the lawsuit has progressed, Gillen determined that Edward E. Gillen Marine, LLC does not owe any funds to American Marine Construction. *See* Gillen Marine, LLC's Verified Answer, attached as Halloin Affidavit Exhibit G. By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

16. In the case of *Basic Towing, Inc., et al. v. Paschen Gillen Skipper Marine Joint Venture, et al.,* Circuit Court of Cook County, No. 12 CH 22630 in which Gillen is a named defendant, Gillen, under oath, avers that it lacks knowledge sufficient to form a belief that the plaintiff in that case, Basic Towing, Inc.. ("BTI") is owed any money under the 31st Street Bond. Riordan Aff., Exhibit 4, ¶27, pp. 9-10.

**Answer:** Admit. By way of further answer, Gillen and DLH's affirmative defenses are at Halloin Affidavit Exhibit I. As indicated in its affirmative defenses, Gillen and DLH are asserting a pay-when-paid defense. (Halloin Aff., Ex. I at p.13–14.) The funds to pay Basic were originally withheld and have now been deposited with the Court by the project owner. Additionally, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

10

17. But, in her deposition, Ms. Jackson testified, "I think thank Basic {Towing} is owed some money." Riordan Aff. Exhibit 2, p.30:14.

**Answer:** Admit. By way of further answer, Ms. Jackson does not admit that Gillen owes Basic Towing money. As Ms. Jackson later clarified, "And I guess the only point that I'm trying to make is that ultimately our concern is, when Paschen verified to the PBC that this work was done, these people should be paid, because Paschen took the money, and that's not right." (Halloin Aff., Ex. M, Jullane Jackson 09/30/16 Dep., 133:10–14.) This reflects the pay when paid affirmative defense in Gillen's Answer to Basic Towing's Amended Complaint, attached as Halloin Affidavit Exhibit I, at p.13. Additionally, Gillen incorporates the two General Responses identified in its response to F&D's F&D's Proposed Fact number 4.

18. In the case of *Central Boat Rentals, Inc., et al. v. Paschen Gillen Skipper Marine Joint Venture, et al.,* Circuit Court of Cook County, No. 12 CH 35980 in which Gillen is a named defendant, Gillen, under oath, admits that the plaintiff in that case, Central Boat Rentals, Inc. ("CBR") entered into two Bareboat Party Charter agreements under which CBR provided Gillen marine vessels, which were used in transporting stone for the construction of the 31st Street Project. Riordan Aff. Exhibit 5, ¶8, p.4.

**Answer:** Admit. By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

19. Central Boats served a Notice of Lien in 2012 and an amended Notice of Lien in 2016 to claim a lien in the amount of $73,031.24. *Id.* at ¶13.

11

Answer: Admit. By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

20. In her deposition Ms. Jackson testified:

> "Q    As you sit here today, as Gillen's representative, do you admit that the money is owed to Central Boat, the amount of money they've included in their lien claim?
>
> A. Yes."

Riordan Aff., Exhibit 2, p. 33:20-24.

Answer: Admit. By way of further answer, Ms. Jackson does not admit that Gillen owes Central Boats money. As Ms. Jackson stated later in the deposition, "And I guess the only point that I'm trying to make is that ultimately our concern is, when Paschen verified to the PBC that this work was done, these people should be paid, because Paschen took the money, and that's not right." (Halloin Aff., Ex. M, Jullane Jackson 09/30/16 Dep., 133:10–14.) Gillen's response to Central Boat's First Set of Interrogatories explains Gillen's defense at interrogatory 20: "Bareboat Party Charter Agreements, under which Central Boat provided Gillen marine vessels CBR 775 and CBR 776, which were used in transporting stone for the construction of the Project. (Halloin Aff., Ex. J p.6.) Bareboat charter agreements are, as the term suggests, "bare boats" or non-crewed. Barging services are not lienable in Illinois. In addition, the bond issued for the Project does not extend to purely watercraft services or non-lienable work. (Halloin Aff., Ex. J p.6.) Additionally,

12

Case 2:13-cv-01291-LA    Filed 12/22/17    Page 12 of 16    Document 152

Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

21.   In the case of *Kiel Sand & Gravel Inc., et al. v. Paschen Gillen Skipper Marine Joint Venture, et al.*, Circuit Court of Cook County, No. 12 CH 16709 in which Gillen is a named defendant, Gillen, admits that the plaintiff in that case, Kiel Sand & Gravel, Inc. ("KSG") on or before May 15, 2010 entered into a first contract with Gillen with respect to the 31st Street Project. Riordan Aff. Exhibit 6, ¶13, pp. 4-5.

**Answer**: Deny. Gillen's first affirmative defense in the Kiel Sand & Gravel matter asserts there is no such contract between the parties, noting that Kiel Sand & Gravel failed to attach alleged contract to their Amended Complaint. (Halloin Aff., Ex. K p. 10.) By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

22.   Gillen admits that KSG "fully and satisfactorily completed all such work under the first contract between GILLEN and KIEL SAND." *Id.* at ¶18, p. 7.

**Answer**:   Admit, but *see* affirmative defense 1. (Halloin Aff. Ex. K, p.10.) Gillen's answer is based upon the existence of an oral contract, while Kiel pleads that it had a written contract.  Gillen has plead a pay-when-paid affirmative defense. (Halloin Aff., Ex. K p.13.) The owner has turned over said funds to the Cook County Circuit Court. (Halloin Aff., Ex. L.) By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

23. Gillen admits that "KIEL SAND has performed services under the first contract in the amount of Four-Hundred-Fifty-Four-Thousand Eight-Hundred Fifty-Seven Dollars and 27/100 ($454,857.27) for which it has not been paid." *Id.* at ¶19, p.7.

**Answer**: Admit, but *see* affirmative defense 1. (Halloin Aff. Ex. K p.10.) Gillen's answer is based upon the existence of an oral contract, while Kiel pleads that it had a written contract. Gillen has plead a pay-when-paid affirmative defense. (Halloin Aff., Ex. K p.13.) The owner has turned over said funds to the Cook County Circuit Court. (Halloin Aff., Ex L.) By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

24. Gillen admits that KSG on or before May 21, 2010 entered into a second contract with Gillen with respect to the 31st Street Project. Riordan Aff. Exhibit 6, ¶13, p. 15.

**Answer**: Deny. Gillen's first affirmative defense in the Kiel Sand & Gravel matter asserts there is no such contract between the parties, noting that Kiel Sand & Gravel failed to attach alleged contract to their Amended Complaint. (Halloin Aff., Ex. K p.10.) Gillen has plead a pay-when-paid affirmative defense. (Halloin Aff., Ex. K p.13.) The owner has turned over said funds to the Cook County Circuit Court. (Halloin Aff., Ex L.) By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

25. Gillen admits that KSG completed all work under the second contract between GILLEN and KIEL SAND. ..." *Id.* at ¶15, p. 16.

**Answer**: Admit, but *see* affirmative defense 1. (Halloin Aff., Ex. K p.10.) Gillen's answer is based upon the existence of an oral contract, while Kiel pleads that it had a written contract. Gillen has plead a pay-when-paid affirmative defense. (Halloin Aff., Ex. K p.13.) The owner has turned over said funds to the Cook County Circuit Court. (Halloin Aff., Ex. L.) By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

26. Gillen admits that "KIEL SAND has performed services under the second contract in the amount of $26,337.19 for which it has not been paid." *Id.* at ¶18, p. 16-17, ¶20, p. 18.

**Answer**: Admit, but *see* affirmative defense 1. (Halloin Aff., Ex. K p.10.) Gillen's answer is based upon the existence of an oral contract, while Kiel pleads that it had a written contract. Gillen has plead a pay-when-paid affirmative defense. (Halloin Aff., Ex. K p.13.) The owner has turned over said funds to the Cook County Circuit Court. By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

27. In her deposition, Ms. Jackson testified that Kiel is owed the money that it sought in its lien clam and "Kiel should most certainly be paid." Riordan Aff. Exhibit 2, pp. 40:21-23, 42:1.

Answer: Admit in part, but deny that Gillen has admitted that it should pay Kiel. Gillen has plead a pay-when-paid affirmative defense. (Halloin Aff., Ex. K p.13.) As also summarized at the end of Jullane Jackson's deposition, "And I guess the only point that I'm trying to make is that ultimately our concern is, when Paschen verified to the PBC that this work was done, these people should be paid, because Paschen took the money, and that's not right." (Halloin Aff., Ex. M, Jullane Jackson 09/30/16 Dep., 133:10–14.) By way of further answer, Gillen incorporates the two General Responses identified in its response to F&D's Proposed Fact number 4.

Dated December 22, 2017.

HALLOIN LAW GROUP, S.C.
Attorneys for Edward E. Gillen Company,

s/ Scott R. Halloin
Scott R. Halloin
Wis. State Bar No. 1024669

HALLOIN LAW GROUP, S.C.
839 North Jefferson Street
Suite 503
Milwaukee, Wisconsin 53202
p 414-732-2424
f  414-732-2422
shalloin@halloinlawgroup.com

S:\Clients\Gillen\Eastern District of Wisconsin\Eastern District of Wisconsin (Case No. 13-CV-1291)\Pleadings\Response to Summary Judgment\Response to F&D Proposed Findings(November 27, 2017).docx