UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FIDELITY AND DEPOSIT COMPANY,
OF MARYLAND,

        Plaintiff,

v.

EDWARD E. GILLEN COMPANY, GARY A.
JACKSON, JULLANE J. JACKSON, and
DLH CONSTRUCTION AND TRUCKING, INC.,

        Defendants.

Case No. 13-CV-1291

---

**REPLY OF FIDELITY AND DEPOSIT COMPANY OF MARYLAND IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT ON COUNT IV OF THE FOURTH AMENDED COMPLAINT**

---

The plaintiff, Fidelity and Deposit Company of Maryland ("F&D"), by its attorneys, Cornelius F. Riordan and Harold E. McKee submits the following as its reply in support of its Cross-Motion for Summary Judgment on Count IV of the Fourth Amended Complaint (DN 146).

**I.    INTRODUCTION**

There is no dispute that Edward E. Gillen Co. ("Gillen") requested that F&D act as a co-surety on the Performance and Payment Bond issued for the 31st Street Project in Chicago. A copy of the 31st Street Bond appears at DN 53-2. Further, there is no dispute that six payment bond lawsuits against the 31st Street Bond remain pending in Cook County, Illinois. Through the pleadings filed by Gillen in the 31st Street cases and the testimony of its corporate designee, Jullane Jackson, F&D has established that Gillen admits that that the following amounts are due:

    a.    Central Boat Rentals, Inc. ($731,031.24);

    b.    Kiel Sand & Gravel, Inc. ($481,194.56);

  c.  Kindra Lake Towing, L.P. ($882,630.09); and

  d.  Kindra Marine Terminal, Inc. ($20,773.45).

Those four total $2,115,629.34. See, DN 148.

  Additionally, F&D has established that Gillen will not be able to meet its obligations to pay the payment bond claimants. Gillen's negative net worth in 2011 as shown on its tax return was in excess of $9 million and as shown on its financial statements was in excess of $19 million. See, DN 139-4, p. 16. Gillen's main response to the cross-motion for summary judgment is that F&D cannot satisfy the elements of a *Quia Timet* claim because Gillen has in its pleadings in the 31st Street cases alleged defenses to the payment bond claims and that F&D has not established that Gillen will not be able pay the claims.

  F&D has presented evidence to establish its right to *Quia Timet* relief. Its cross-motion should therefore be granted and Gillen's Motion for Summary Judgment should be denied.

## II. ARGUMENT

### A. Illinois Law Applies to Count IV of the Fourth Amended Complaint.

  Absent any analysis, Gillen presumes that Wisconsin law governs the *Quia Timet* claim alleged in Count IV of the Fourth amended Complaint. It does not. Illinois law governs. A federal court sitting in diversity applies the law of the state in which it sits, including the state's choice-of-law rules. *BB Syndication Services, Inc. v. First American Title Insurance Company*, 780 F.3d 825 (7th Cir. 2013). Under Wisconsin law, the "first rule" in the choice-of-law analysis is that the law of the forum should presumptively apply unless it becomes clear that non-forum contacts are of the greater significance. *Cowley v. Abbott Laboratories, Inc.*, 476 F.Supp.2d 1053, 1057 (U.S.D.C., W.D. Wis. 2007 (Shabaz, J.)). When faced with a choice-of-law question Wisconsin courts apply five choice-influencing factors. *Id.* These five factors are as follows: (1)

predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Id.* Accordingly, Wisconsin law presumptively applies unless it becomes clear that Illinois' contacts are of greater significance. *Id.*

Factor 1: Predictability of results concerns the parties' expectations. *Id.* The 31st Street Bond, which is the instrument by which F&D is subjected to lability was issued for an Illinois based project. Gillen was a member of the joint venture that was awarded the general contract for the 31st Street Project and Gillen performed work on the project as a subcontractor to the joint venture. Further, Gillen's sub-subcontracts were performed in order to complete its subcontract for the Illinois based project. The bond claims, which are the subject of the *quia timet* claim, are all being litigated in Illinois. It is therefore reasonable to expect that Gillen would be called upon to defend itself in Illinois. Factor 1 favors Illinois.

Factor 2: The second factor, maintenance of interstate and international order "requires that the jurisdiction that is minimally concerned defer to the jurisdiction that is substantially concerned. *Id.* at 1058. Wisconsin is minimally concerned with the outcome. Its only contact is that Gillen's place of business is located in Wisconsin. Wisconsin has little or no interest in the outcome of a controversy concerning the rights of a surety (F&D) whose bond risk is on an Illinois project, which is owned and funded by an Illinois public entity, the Public Building Commission of Chicago. Further, Gillen's, as principal, and F&D's, as surety, bond obligations and the payment bond claimants' rights are governed by and subject to Illinois statute, 30 ILCS 550/1 and 2. Factor 2 favors Illinois.

Factor 3: The third factor stands for the proposition that a "simple and easily applied rule of substantive or procedural law is to be preferred. *Id.* This factor favors Illinois because, as Gillen

acknowledges in its response brief, Illinois has long afforded the equitable remedy to sureties. (DN 151, p3). Gillen also points out that Wisconsin has little or no law on the subject, although it has applied exoneration in the surety context. *Id.* Because Illinois law is better developed, it will be easier for the Court to apply the law of Illinois to this case.

Factor 4: The fourth factor is advancement of the forum's governmental interests. *Cowley*, 476 F. Supp. 2d at 1058. Wisconsin has little interest in the outcome of this case since it involves an Illinois public project. On the other hand, Illinois has a strong governmental interest because it involves an Illinois public owner and Illinois public funding. Because this case concerns the compelling of a bond principal to perform its Illinois obligations to protect a surety that is a principal on a statutory bond under Illinois law, this factor favors Illinois.

Factor 5: The fifth and final factor is application of the better rule of law. *Id.* at 1059. Here, the better rule of law is Illinois, not because it is different from Wisconsin, but because it is better developed and therefore more easily applied.

Based on the foregoing, Illinois law should apply here.

    **B.    F&D has Established its Right to *Quia Timet* Relief.**

*Quia Timet* is the right of a surety to demand that the principal place the surety in funds when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor. 74 Am. Jur. Suretyship §123. *Quia timet* includes the surety's right to require its principal to post security for discharge of his primary obligation for payment of anticipated liability by the surety. Mann & Jennings, "Quia Timet: A Remedy for Fearful Surety," 20 Forum 687 (1985). In equity a surety who has not paid the debt, even though he has not been troubled by the creditor, has a right to have the principal secure him against loss. 72 C.J.S., *Principal & Surety*, §303. The foregoing establishes

that the concept of using a bill of *Quia Timet* as a vehicle by the suety to compel the posting of collateral by its principal to secure the surety against future bond losses.

As Gillen acknowledges in its brief, Illinois has long afforded the right of *quia timet* to sureties, citing *Western Casualty and Surety v. Biggs*, 217 F. 2d 163,165 (7th Cir. 1954) (DN 151, p. 3). In Illinois an action for *quia timet* relief allows a court to impose an equitable remedy if plaintiff can show that debts are or will become due, the principal refuses to pay them, and that, if they refuse to pay or perform, the surety will become liable. *USF&G v. Cler Construction Services, Inc.*, 2003 WL 1873926 (U.S.D.C., N.D. Ill 2003). This is similar to the elements set forth in the case of *Borey v. National Fire Insurance Company of Pittsburgh Pennsylvania*, 934 F. 2d 30 (2nd Cir. 1991). (See DN 153 at p. 3).

*Borey* concerned the surety's claim for exoneration and *quia timet* relief. The court analyzed the differences between the two remedies:

> "*Quia timet* is the right of a surety to demand that the principal place the surety "in funds" when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor. (citations omitted) Exoneration, though closely related, is distinct. It is the surety's right, after the principal's debt has matured, to compel the principal to honor its obligation to the creditor. (citations omitted)
>
> \*     \*     \*
>
> *Quia timet* is the applicable remedy available to the surety before the principal's debt is mature when it becomes likely that the principal will default on his obligation; exoneration is the proper remedy once liability has matured and the principal has defaulted on his debt to the creditor.
>
> \*     \*     \*
>
> *Quia timet* and exoneration contain common substantive elements. Specifically, the surety must establish that the debt is presently due (exoneration) or will come due (*quia timet*), that the principal is or will be liable for the debt, and, that absent equitable relief, the surety will be prejudiced because it will be forced to advance the money to the creditor."

934 F 2d at 32-33. The surety is not entitled to *quia timet* relief if the principal has a defense against the surety or if the principal has a fraud defense against the bond claimant (sometimes referred to as the creditor), which can be asserted by the surety. *Id.*

Gillen has raised no defense against F&D and none of the defenses that it has alleged in the Cook County cases against the bond claimants are based on fraud. Therefore, if E&D establishes that it has reasonable grounds to believe that it will suffer a loss in the future, that the principal or will be liable for the loss, and, that absent equitable relief, F&D will be prejudiced because it will be forced to advance the money to the creditor, F&D is entitled to receive the relief of *quia timet.*

### 1. F&D has reasonable grounds to believe that it will suffer a loss.

Gillen's admission that it owes Central Boat Rentals, Inc. the sum of $731,031.24, Kiel Sand & Gravel, Inc. the sum of $481,194.56, Kindra Lake Towing, L.P. the sum of $882,630.09 and Kindra Marine Terminal, Inc. the sum of $20,773.45, which in the aggregate equal $2,115,629.34 (DN 148) is sufficient to satisfy the first two elements of the *quia timet* claim. The fact that Gillen concedes that those amounts should be paid to the four claimants provides F&D with grounds to reasonably believe that the bond debt will become due as to those four claimants.

Further, Ms. Jackson, in her deposition, testified, "…but I do not dispute that Basic Towing is probably owed some money.", notwithstanding the defenses raised to Basic Towing's claim. (DN 153-13, p. 30:14-18) As to American Marine, she testified that she could not predict the outcome of the claim and did not outright deny American Marine would not recover some or all of its claim. (DN 153-13, p. 26:5-14) Based on this testimony, it is reasonable for F&D to believe that both Central Boats and American Marine will likely recover some or all of their respective bond claims.

As to the specific defenses raised, Gillen offers pleadings filed in the Cook County lawsuits to show that the defenses exist. (DN 153-1, 153-2, 153-7, 153-9 and 153-11) Gillen also submits legal memorandum filed by counsel for Gillen in connection with motion practice in the Cook County cases to show defenses have been raised. None of those constitute evidence and cannot be considered by this Court. F.R.CP. 56(c)(1)(A).[1] On summary judgment, Gillen cannot merely refer to defenses that have been pled or argued. It must present evidence to support the defenses. Gillen has not done so. Therefore, even if the existence of non-fraud defenses are to be taken into consideration, Gillen has not presented any evidence to support the defenses.

In its response to F&D's statement of facts (DN 152), Gillen has raised two global defenses. The first is what Gillen refers to as a "pay when paid' defense, i.e., the bond claimants would receive payment when Gillen received payment from the PGSSMJV. The defense is not based upon any specifically identified written agreement to that effect, but upon unidentified agreements and custom and practice. See, for example, DN 153-9, pp. 14-15. A pay when paid provision does not shift the risk of non-payment to the owner (or in this case the general contractor. *Beal Bank Nevada v. Northshore Center THC*, LLC, 2016 IL App (1st) 151697; 64 N.E.3d 201,209-211, 407 Ill.Dec. 823, 831-33 (1st Dist. 2016). A pay when paid provision in a subcontract merely regulates

---

[1] Rule 56(c)(1)(A) requires that a party cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to show an issue of fact can or cannot be disputed. FED. R. CIV. P. 56(c)(1)(A). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1993); *see also Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984). Consistent with the purpose of summary judgment, the Seventh Circuit has held that a party cannot solely rely on pleadings to support its contention for summary judgment, but must point to the forms of evidence listed in Rule 56 to show the existence or absence of a genuine issue of material fact. *See Boruski v. U.S.*, 803 F.2d 1421, 1428 (7th Cir. 1986); *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995); *Smith v. Anson*, 801 F.Supp. 176, 180 (S.D. Ill., 1992; and *Havoco of America, Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 856 F.Supp. 466, 469 (N.D. Ill., 1994).

the time for payment; the subcontractor must pay its lower tier subcontractors within a reasonable time. *Id.*[2] Thus Gillen's pay when paid defense will likely fail.

Gillen also posits that that the bond claimants are not covered by the bond because they are fourth tier contractors. (DN 153-3, pp. 5-10). In Illinois, the language of the bond controls unless it is more restrictive that the coverage mandated by the Illinois Public Construction Bond Act (30 ILCS 550/1 and 2). *Aluma Systems, Inc. v. Frederick Quinn Corp.,* 206 Ill.App.3d 828, 564 N.E.2d 1280, 151 I11.Dec. 618 (1st Dist. 1990); *Board of Local Improvements South Palos Township Sanitary District ex rel. North Side Tractor Sales Co. v. St. Paul Fire & Marine Insurance,* 39 III.App.3d 255, 258, 259, 350 N.E.2d 36 (1st Dist. 1976). The 31st street Bond contains expansive language regarding the covered claimants. The 31st Street Bond expressly provides that the principal and surety shall promptly pay all persons firms and corporations supplying labor, materials, facilities or services in the prosecution of the work provided for in the general contract. (DN 53-2). The language contains no limitation as to tiers of subcontractors.[3]

## 2. Gillen will be Liable for the Amounts Claimed by the Bond Claimants

The admissions by Gillen in its pleadings coupled with the deposition testimony establish Gillen's liability to the bond claimants. Gillen admits that the claimants furnished services in the prosecution of the work. (DN 152, ¶¶4, 5, 6, 9, 11, 14, 17, 22, 23, 25, and 26. Further, Ms. Jackson testified in the deposition, "And I guess the only point that I'm trying to make is that

---

[2] The court in *Beal Bank* contrasted the "pay when paid' defense to a "pay if paid" defense. The latter requires the parties to clearly and unequivocally express their intent in writing to shift the risk of non-payment. Beal Bank, 64 N.E.3d at 209-211. And one court in Illinois has held that a properly drafted pay if paid provision is not a defense to a payment bond clam. *Brown & Kerr Inc. v. St. Paul Fire & Marine Insurance Co.,* 940 F.Supp. 1245, 1249 (N.D.Ill.1996).

[3] Attached hereto as Exhibit A is a copy of Kindra lake Towing's reply brief on its summary judgment motion against the sureties on the 31st street Bond. At pages 7-13, Kindra Lake Towing more fully explains the expansive nature of the bond language,

ultimately our concern is, when Paschen verified to the PBC that this work was done, these people should be paid…" (DN 153-13, p. 133:10–14.).

### 3. Gillen will not be able to meet its bond obligations.

Gillen has offered no evidence to counter that submitted by F&D that Gillen is insolvent and cannot meet its bond obligations.[4] In addition to the information contained in the D. M. Studler Report that Gillen's 2011 federal income tax return and financial statement reflected a negative net worth in excess on $9 million, Gillen's own filings further establish Gillen's insolvency. In the Intervenor Complaint filed by Gillen Marine, it is alleged that in February 2012 Gillen assigned to Gillen Marine all of its remaining assets, including its rights and remedies with respect to the 31st Street Project and its present claims. (DN 153-2, p. 3, ¶2). Gillen transferred its other assets to Michaels Corp. as a part of the same transaction. *Id.* Thus, as of February 2012 Gillen had no assets. Gillen offers no evidence that its financial condition has changed in any respect since February 2012. In late 2011, Gillen told Patrick Hannigan, senior underwriter for F&D's parent company, Zurich, that it was losing millions of dollars due to the 31st street Project. Deposition of Patrick Hannigan, pp. 41:7-43:17.[5]

Finally, F&D is prejudiced because it will have to use its own funds to pay the claimants, absent a deposit of collateral. *Borey v. National Fire Insurance Company of Pittsburgh Pennsylvania*, 934 F. 2d 30, 32 (2nd Cir. 1991).

---

[4] Gillen seeks to discredit the Studler report through the introduction of two letters from a Steven C VanderBloemen. DN 153-14 and 153-15. The letters purport to contain expert opinions of Mr. VanderBloemen, but they are not accompanied by any testimony from Mr. VanderBloemen by affidavit or otherwise to meet the requirements of Federal Rule of evidence 703 and *Daubert v. Merrell Dow Pharmaceuticals,* 509 U. S. 579, 592-93; see also, *Haley v. Kolbe Millwork Co.*, 863 F. 3d 600, 602-603 (7th Cir. 2017). *In Daubert*, the Supreme Court directed the district courts to look to a non-exclusive list of factors to determine whether expert testimony will be admitted. 509 U.S. at 593-94. In addition, Gillen offers nothing in the way of credentials for Mr. VanderBloemen to establish that he has any expertise in the field in which his opinions are offered. The letters should therefore be stricken as inadmissible.

[5] Attached hereto as Exhibit B is a copy of the complete transcript of Mr. Hannigan's deposition. Gillen submitted an abbreviated copy with its summary judgment materials. DN 123-2.

## III. CONCLUSION

For the reasons stated in F&D' opening brief (DN 150) and the reasons stated herein, the plaintiff, Fidelity and Deposit Company of Maryland, prays that this Honorable Court grant its cross-motion for summary judgment, deny Gillen's motion for summary judgment and issue a Bill of Quia Timet ordering Gillen to deposit with F&D the sum of $2,115,629.34 as collateral.

FIDLEITY AND DEPOSIT COMPANY OF MARYLAND


By: /s/ *Cornelius F. Riordan*
Cornelius F. Riordan (IL ARDC #2342634)
Email: criordan@srcattorneys.com
*Attorneys for Plaintiff*
SCHUYLER, ROCHE & CRISHAM, P. C.
Two Prudential Plaza
180 N. Stetson Ave., Suite 3700
Chicago, Illinois 60601
Tel: (312) 565-2400
Fax: (312) 565-8300