# EXHIBIT A

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION
### MORTGAGE FORECLOSURE AND MECHANICS LIEN SECTION

| | | |
|---|---|---|
| KINDRA LAKE TOWING, LP, and PUBLIC BUILDING COMMISSION OF CHICAGO, f/u/b of KINDRA LAKE TOWING, LP, | ) ) ) ) | No.: 12 CH 17679 Consolidated with 12 CH 00417 |
| | ) ) | Hon. Anthony C. Kyriakopoulos Cal. 52 |
| Plaintiffs, | ) ) | Consolidated with: |
| | ) | 12 CH 03946      12 CH 30599 |
| v. | ) | 12 CH 09167      12 CH 35905 |
| | ) | 12 CH 16705      12 CH 35980 |
| PASCHEN GILLEN SKIPPER MARINE JOINT VENTURE, *et al.*, | ) ) | 12 CH 16709      12 CH 36178 |
| | ) | 12 CH 17668      12 CH 42085 |
| | ) | 12 CH 22630      15 CH 05207 |
| Defendants. | ) | 12 CH 26089      15 CH 10534 |
| | ) | 12 CH 26094      15 CH 13526 |
| | ) | 12 CH 28790 |

## USE PLAINTIFF KINDRA LAKE TOWING, LP'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNT II AGAINST SURETIES

Use Plaintiff in Case No. 12 CH 17679, the Public Building Commission of Chicago for the use and benefit of Kindra Lake Towing, LP ("Kindra Lake Towing"), by its attorneys, Conway & Mrowiec, submits this Reply in Support of its Motion for Summary Judgment under 735 ILCS 5/2-1005(d), solely on Count II of Kindra Lake Towing's Second Amended Complaint against Continental Casualty Company ("Continental"), Safeco Insurance Company of America ("Safeco"), and Fidelity and Deposit Company of Maryland ("Fidelity") (Continental, Safeco and Fidelity, collectively "Sureties").

A summary judgment motion is a substitute for trial; the movant must submit evidence and, if the movant does so, respondent must submit countering evidence. Kindra Lake Towing supported its burden on its Motion for Summary Judgment on its Bond Claim (Count II) with the only competent evidentiary facts now in the record available to the Court on this Summary Judgment Motion:

1

(1)     the Bond and its incorporated Prime Contract, and

(2)     the Affidavit of John Kindra that Kindra Lake Towing is owed the principal balance of $882,630.09 for Kindra Lake Towing's Watercraft Towing Services as set forth in Kindra Lake Towing Watercraft Towing Services Customer Open Balance and unpaid invoices (Ex. 2, Kindra Affidavit and Exs. 2B & 2C, Kindra Aff. ¶¶ 8 – 14).

Overlooking basic principles of suretyship and the unambiguously broad language of this Bond, Sureties, one of Sureties' principals under the Bond, Edward E. Gillen Co. ("Original Gillen"), and account debtor, DLH Construction and Trucking Inc. ("DLH"), raise two primary arguments to oppose Kindra Lake Towing's Motion: (1) Sureties are entitled to rely on the defenses and counterclaims of non-principals under the Bond; and (2) Kindra Lake Towing is not a proper claimant.

Despite 1,066 pages of their combined Responses, Respondents submitted only pleadings, parol evidence, lack of personal knowledge and conclusions. Those are incompetent to defeat Kindra Lake Towing's motion for summary judgment supported by competent affidavit. Respondents never rebutted Kindra Lake Towing's competent evidence with their own competent evidentiary facts in order to raise a material question of fact:

(a)     Even if the Court were to overlook the legal principle that sureties cannot assert "defenses" or "counterclaims" of the non-principals, DLH and Gillen Marine, none of Respondents submitted any competent evidence (i) supporting any specific denial with particular facts based on personal knowledge, and not conclusions, to John Kindra's Affidavit that Kindra Lake Towing's invoices are owing; or (ii) supporting any defense or claim of any "set-off" by testimony (by deposition or affidavit) based on personal knowledge of a witness (and not mere conclusions of non-witnesses to the events) that Kindra Lake Towing is liable for any damages to anyone for anything; and

2

(b)     the Bond's unambiguous broad language cannot be overcome by parol evidence.  Without those competent evidentiary facts from Respondents, "there is no genuine issue as to any material fact and [Kindra Lake Towing] is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c).

## I.
## RESPONDENTS SUBMITTED NO COMPETENT EVIDENTIARY FACTS TO RAISE A MATERIAL QUESTION OF FACT

### A.     Respondents First Mischaracterize Kindra Lake Towing's Argument

Respondents mischaracterize Kindra Lake Towing's arguments and then oppose the arguments as so mischaracterized.  Using Sureties' terms of "put" and "take" (Sureties' Response at 8), Kindra Lake Towing contends that Sureties' principal, Original Gillen, and Original Gillen's subcontractor, DLH, each admitted by pleadings, deposition and interrogatory answer, solely the "put" – a contract balance owing in the principal amount of $882,630.09.

Kindra Lake Towing does not dispute the legal principle that Sureties may assert the defenses of their Principal, here the Joint Venture and its venturers, including Original Gillen. But Original Gillen contends it has no contract with, or obligation to pay, Kindra Lake Towing; instead, DLH had the contract with, and duty to pay, Kindra Lake Towing, in the first interest. And Original Gillen has no extant claims itself against Kindra Lake Towing.[1]  The defenses to the "put" and claims raised as "takes" are the maritime claims of DLH and Original Gillen's assignee, Gillen Marine LLC ("Gillen Marine").  Those entities presumably will continue to pursue those insured maritime claims, under contract and tort theories, in the Circuit Court of Cook County, unless dismissed.  Instead, Kindra Lake Towing contends that, as a matter of law, Sureties cannot use the defenses of a non-principal, DLH, and claims of non-principals, DLH

---

[1]  Original Gillen says it has a defense regarding allegedly converted rock but Original Gillen asserted that as a counterclaim and then abandoned it.

3

and Gillen Marine, the "takes", as "Principal's defenses" for Sureties to refuse to pay Kindra Lake Towing's Bond Claim.

**B.** <u>John Kindra's Affidavit Is Uncontradicted By Competent Evidence</u>

An affidavit operates as testimony at trial in the summary judgment context. *Robidoux v. Oliphant,* 201 Ill. 2d 324, 335 (2002). "If a party moving for summary judgment supplies facts which, if not contradicted, would entitle such party to a judgment as a matter of law, the opposing party cannot rely on his pleadings alone to raise issues of material fact." *Purtill v. Hess,* 111 Ill. 2d 229, 240 – 41 (1986). Facts contained in John Kindra's Affidavit that are not contradicted by a counteraffidavit are admitted and must be taken as true for purposes of the Motion for Summary Judgment. *Purtill,* 111 Ill. 2d at 241.

Respondents simply failed to present competent evidentiary facts opposing Kindra Lake Towing's competent evidentiary facts: the Bond, the Contract and John Kindra's Affidavit. All that Respondents submitted in opposition was argument, pleadings, parol and non-specific affidavits of conclusions without personal knowledge. Because of Respondents' glaring failure, the Court need not decide whether Original Gillen or DLH, or both of them, previously admitted the $882,620.09 "put" owing to Kindra Lake Towing. Respondents did not contest the "put" by competent counteraffidavit. Likewise, the Court need not decide whether Sureties legally may raise as "Principal's defenses" the defenses and claims of a non-principal, DLH, or the claims of a stranger to the Project, Gillen Marine, neither of whom are in privity with Sureties or, Original Gillen's defenses, the "takes." Respondents did not support the "takes" by competent affidavit.

**C.** **Respondents Raise No Question of Material Fact that $882,630.09 Is Due to Kindra Lake Towing Without "Set-Off"**

1. <u>On the Issue of What is "Due", Sureties Insufficiently Rely Solely on Pleadings and an Affidavit that Merely References Pleadings</u>. Sureties contend the amounts

4

claimed by Kindra Lake Towing are "*disputed* contract balance" (Sureties' Response at 2). Sureties contend that it is "Kindra's position that it can get paid without proving the amount it is due on the underlying PO." *Id.* Sureties then cite Exhibits A, B, D, I and K to Sureties' Response for their argument that "the amount actually due Kindra under the Purchase Order is material and disputed" (Sureties' Response at 5). Those Exhibits are DLH's Second Amended Counterclaims, the Intervenor Complaint of Gillen Marine, Original Gillen's and DLH's Answer and Affirmative Defenses, the Affidavit of Kenneth Mastny ("Mastny Affidavit") and Joint Venture's and Sureties' Answer, Affirmative Defenses and Counterclaim.

Where a party moving for summary judgment, like Kindra Lake Towing, provides evidentiary facts which, if not contradicted, would entitle that party to judgment, the party opposing the motion cannot rely solely upon his pleadings to raise genuine issues of material facts. *Parkway Bank & Trust Co. v. Korzen,* 2013 IL App. (1st) 130380, ¶ 49; *Burks Drywall, Inc. v. Washington Bank & Trust Co.,* 110 Ill. App. 3d 569, 575 (2d Dist. 1982). A verified answer to a complaint does not substitute for specific affidavits in a summary judgment proceeding. *Fryison v. McGee,* 106 Ill. App. 3d 537, 539 (1st Dist. 1982). "The fact that the pleading may be verified will generally not affect this rule since the pleading will rarely (and should not) match the specificity of the affidavit." *Central Clearing, Inc. v. Omega Industries, Inc.,* 42 Ill. App. 3d 1025, 1028 (1st Dist. 1976). Therefore, the pleadings upon which Respondents rely are legally inadequate to contradict John Kindra's Affidavit of the principal amount due to Kindra Lake Towing and the Watercraft Towing Services performed.

The Mastny Affidavit submitted by Sureties likewise is inadequate; it does nothing more than conclude from pleadings and provides no particular underlying facts of which he has personal knowledge. Mastny "reviewed the pleadings and interrogatories in this matter" (Mastny Aff. ¶ 5), notes that Sureties' Answer denies that Kindra Lake Towing is due

5

$882,630.09 (Mastny Aff. at ¶ 6), contends Kindra Lake Towing may not present invoices but owes Surety an accounting, payment must be approved and must consider setoffs of DLH, Gillen or "general contractor" (Mastny Aff. ¶ 7), notes "Sureties, in their Answer, have pled Affirmative Defenses . . . currently at issue" (Mastny Aff. ¶ 8), and "Sureties have knowledge through pleadings filed in this lawsuit that the general contractor, Gillen and DLH have also denied that Kindra is due the alleged sum of $882,630.09 and have all respectively pled Affirmative Defenses and/or Counterclaims" (Mastny Aff. ¶ 9). Such allegations which purport to contradict averments of fact in an affidavit are insufficient to create issues of material fact precluding summary judgment. *Fooden v. Board of Governors of State Colleges & Universities,* 48 Ill. 2d 580, 587 (1971) (affirming grant of motion for summary judgment where respondent submitted no counteraffidavit), *cert. denied,* 408 U.S. 493 (1972).

2. **On the Issue of What is "Due", Gillen and DLH Submitted No Evidence in Opposition to John Kindra's Affidavit**. All of Gillen and DLH's Exhibits to their Response to Kindra Lake Towing's Motion attempt to counter Kindra Lake Towing's Gillen and DLH's admissions argument (Gillen/DLH Exs. 1, 2 and 7) and to argue Kindra Lake Towing is not a proper claimant on the Bond (Gillen/DLH Exs. 3, 4 – 6 and 8), not to prove that amounts are not owing. Even on Original Gillen's "rock" defense, Original Gillen submitted no Affidavit. Instead, Original Gillen and DLH were content to cite *Shirley v. Ellis Drier Co.,* 379 Ill. 105 (1942) for the proposition that "where a defense raising an issue of fact as to plaintiff's right to recover is set up, a summary judgment motion must be denied." (Original Gillen/DLH Response at 10). But in *Shirley,* unlike here, the respondent to the summary judgment motion filed a counteraffidavit setting "forth particular facts of its own knowledge, showing association, consultation and opportunity of having knowledge of the [respondent's] business, which would bear upon the issue in the answer." *Shirley,* 379 Ill. at 110. In this case, neither Mastny nor

6

anyone else on behalf of Respondents (a) contests a particular Kindra Lake Towing invoice, or (b) affies from personal knowledge any facts supporting any defense or claim that Kindra Lake Towing is legally liable for any damage to barges or for stone or, if so, how much those damages were. Respondents simply have raised no question of fact (a) to contradict John Kindra's Affidavit that Kindra Lake Towing is owed $882,630.09 in principal, or (b) to establish any claim of recoupment or setoff at all. Under 2-1005(c) and the case authority governing summary judgment, the only competent evidentiary fact is that Kindra Lake Towing is owed $882,630.09.[2]

## II.
## THE BOND UNAMBIGUOUSLY PROVIDES THAT
## KINDRA LAKE TOWING IS A PROPER CLAIMANT

**A.**    <u>The Broad Bond Does Not Limit A Claim At Kindra Lake Towing's Level</u>

    **1.**    <u>A Bond Legally May Be Broader Than the Statute Requires</u>. "The contractor and its surety are free to contract with the public entity for additional liability which exceeds the statutory provisions." *Aluma Systems, Inc. v. Frederick Quinn Corp.,* 206 Ill. App. 3d 828, 830 at 855 (1st Dist. 1990) citing *Illinois State Toll Highway Commissioner v. M. J. Boyle & Co.,* 38 Ill. App. 2d 38, 51 (1st Dist. 1962). Sureties provided such a broader Bond here.

    **2.**    <u>The Bond is Unambiguously Broad</u>. The Bond reads in relevant part:

> "The condition of this obligation is such, that whereas the Principal entered into a certain Contract, **hereto attached**, with the Commission, dated April 13, 2010, for the fabrication, **delivery**, performance and installation of

> > 31st Street Harbor Coastal (Re-Bid)
> > 3155 South Lake Shore Drive, Chicago, Illinois
> > New Construction

> in the referenced project area **and other miscellaneous work collateral thereto**."

---

[2] Respondents cite cases where a surety was permitted to assert the recoupment rights of its Principal against the guilty claimant. But all of these cases reach down only to avoid one tier, the Principal's subcontractor, not as here, claims of a sub-subcontractor and an assignee, where the Principal does not itself own those claims. Moreover, there is another line of cases which does not allow a surety even its Principal's recoupment right beyond the party in privity with the Principal. *See, e.g., United States ex rel. Martin Steel Constructors v. Avanti Steel Constructors,* 750 F. 2d 759, 762 (9th Cir. 1984).

7

(emphasis added).

The Bond "is null and void" if the Principal shall

"promptly pay all persons, firms and corporations, **supplying** labor, materials, **facilities or services in the prosecution of the work provided for in the Contract**
. . .

The Principal and Surety severally and jointly agree that this Bond, and the undertakings contained herein, **are also for the benefit of all subcontractors and other persons furnishing . . . facilities and services** to the Principal or **for performance by the Principal of said Contract**" (Kindra Ex. 1, emphasis added).

In summary, the Bond form unambiguously covers "delivery", applies "in the referenced project area and other miscellaneous work collateral thereto" "in prosecution of the work provided for in the Contract" and is "for the benefit of all subcontractors and other persons furnishing . . . facilities or services to the Principal or for performance by the Principal."

3. **The Bond and the Contract Must Be Read Together.** "[A] bond and the contract it secures must be read as one instrument." *City of Elgin v. Arch Insurance Co.*, 2015 IL App. (2d) 150013, ¶ 23 (quoting *Lake View Trust & Savings Bank v. Filmore Construction Co.*, 74 Ill. App. 3d 755, 757 (1st Dist. 1979)). "[W]hen the bond expressly incorporates an underlying contract by reference (as [is] the case here), the terms of the underlying contract could supply the meaning of the language of the bond." *Filmore Construction Co.*, 74 Ill. App. 3d at 757. Here, the Contract defines "Subcontractors" broadly without regard to privity. Book 2, Section 4.03, Subcontracts, provides:

"8. The Contractor shall at all times be responsible for payments to Subcontractors for Work performed by such Subcontractors." (Kindra Ex. 10, JV 192).

Book 2, Section 1.01, Definitions, provides:

"Wherever used in any of the Contract Documents, the following meanings are given to the terms herein defined:" (Kindra Ex. 10, JV 180).

8

. . .

28. 'Subcontractor' means any partnership, firm, corporation or entity other than an employee of the Contractor, that furnishes labor and/or materials to the Contractor, **whether or not the Subcontractor is in privity with the Contractor**." (emphasis added) (Kindra Ex. 10, JV 181).

Book 2, Section 5.02, Performance and Payment Bond, provides:

"1. Before award of the Contract, the Contractor will deliver to the Commission a Performance and Payment Bond in the amount set forth in Book 1. The surety or sureties issuing the bond must be Acceptable to the Commission and **the bond must be in the form provided by the Commission**." (emphasis added) (Kindra Ex. 10, JV 193).

Book 2, Section 1.01, Definitions, provides:

"Whenever used in any of the Contract Documents, the following meanings are given to the terms herein defined:" (Kindra Ex. 10, JV 180).
. . .

5. . . . 'Contract Documents' means all of the following component parts, including exhibits attached thereto and/or incorporated therein by reference, . . .

  a. Book 1 - Project Information, Instructions to Bidders, and Execution Documents". (Kindra Ex. 10, JV 180).

The Contract requires a specific form of "Performance and Payment Bond . . . [page] 40" (Kindra Ex. 9, GLN 034063). The operative body of the unsigned "Specimen" of the Bond appeared at page 40 of Book 1 (Kindra Ex. 9, GLN 34101 – 04) which the Contract required Sureties to use, is identical to the Bond signed by Sureties (Kindra Ex. 1).[3]

 **4.** **The Bond Might Be Read Without Ignoring Alternatives**. The Bond is not limited to a particular tier of claimants. The Bond provides alternatives, not synonyms - - [1][A] **"subcontractors and** [1][B] **other persons** providing . . . facilities and services 2[A] to the Principal or [2][B] **for performance by the Principal of said Contract**." (emphasis and number

---

 [3] There is one immaterial difference outside the operative body of the Bond in a footnote: "A facsimile signature will not be accepted by the Commission." (Kindra Ex. 10) versus "The Commission will not accept a facsimile signature." (Kindra Ex. 1).

added) (Kindra Ex. 1). The alternatives provided by the express language of the Bond cannot be ignored as surplusage; instead, the language providing alternatives expands Sureties' obligation. *Neenah Foundry Co. v. National Surety Corp.,* 47 Ill. App. 2d 427, 432 – 34 (1st Dist. 1964).

By the Contract definition incorporated in the Bond, "Subcontractor" includes those "whether or not the Subcontract is in privity with the Contractor. Thus, at the very minimum, a "Subcontractor" includes a sub-subcontractor, like DLH. Indeed, tiers lower than sub-subcontractors might be "Subcontractors" under this language. Then, in order to have any meaning at all, "other persons" must be those, like Kindra Late Towing (or even a lower tier), contracting with sub-subcontractors. Otherwise, "other persons" would be surplusage to "Subcontractors" already defined as not limited to those in privity with the Principal.

Likewise, "[t]o the Principal" and "performance by the Principal" are alternatives and not synonymous. Otherwise, one would be surplusage. Principal's Contract required delivery of stone for the breakwater to be paid at a unit price (Kindra Ex. 4A, page JV 457). The Prime Contract provides barging is part of the unit price for stone (Kindra Ex. 4A, page JV 477). No one contests that the barges had to be towed by crewed tugboats (Kindra Aff. ¶ 20). No one contests that Kindra Lake Towing towed the barges delivering the stone (Kindra Aff. ¶ 8) to and from the Project (Kindra Aff. ¶ 9) so that the Joint Venture Principal could perform the Prime Contract. Thus, Kindra Lake Towing's towing of the barges of stone was by "other persons providing . . . facilities and services . . . for performance by the Principal of said Contract."

5. **The Court May Not Legally Consider Respondents' Parol Evidence to Narrow the Integrated Bond**. Original Gillen and DLH argue "there is ample evidence that the bonding scheme was never intended to extend to DLH's subcontractors (Gillen/DLH Response at 7). To convince the Court to ignore the Bond's broad express language, Original Gillen and DLH even argue that "[t]he text of the bond here was not developed in a vacuum – it was

10

approved in form by the Public Building Commission and was the result of extensive negotiation between the PBC, [Surety] F&D, Gillen and F.H. Paschen, S.N. Nielson [sic]." (Gillen/DLH Response at 7). Of course, a comparison of the Specimen Bond form in the Prime Contract bidding materials (Kindra Ex. 9, pages 40 – 43) to the signed Bond (Kindra Ex. 1) belies any notion that "extensive negotiation" changed the Bond. The Bond is the Commission's form.

In attempts to narrow the Bond, Original Gillen and DLH submit the Affidavit of Jullane J. Jackson ("Jackson Affidavit") and the deposition transcript of Lawrence Michael. The Jackson Affidavit and Michael's deposition transcript are inadmissible parol evidence.

This Contract is incorporated in the Bond. The Contract and, thus, the Bond, contain an integration clause at Book 2, Section 1.05 (Kindra Ex. 10). An affidavit of the supposed understanding of the parties regarding an integrated writing is inadmissible to vary the meaning on summary judgment. *Policemen's Benevolent Labor Comm. v. County of Kane*, 2012 Ill. App. LEXIS 607, 2012 IL App (2d) 110993. Instead, traditional contract interpretation principles in Illinois require that:

> "an agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence." *Western Illinois Oil Co. v. Thompson*, 26 Ill. 2d 287, 291, 186 N.E.2d 285 (1962).

In applying this "four corners" rule, a court initially looks to the language of a contract alone. *See Rakowski v. Lucente*, 104 Ill. 2d 317, 323 (1984) (stating that both the meaning of a written agreement and the intent of the parties is to be gathered from the face of the document without assistance from extrinsic evidence). If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence. *Farm Credit Bank v. Whitlock*, 144 Ill. 2d 440, 447, 163 Ill. Dec. 510, 581 N.E.2d 664 (1991). If the Court were to find any ambiguity, in this case which involves the contracts of sureties, the

11

Bond is to be strictly construed against the Sureties. *M. J. Boyle & Co.*, 38 Ill. App. 3d at 51 - 55 (1st Dist. 1962). The Jackson Affidavit and Michael's deposition transcript are inadmissible.[4]

6. **Respondents Cite No Applicable Case Authority to Narrow This Broad Bond**. Relying on caselaw from outside Illinois and ignoring unfavorable language of the Bond (including its incorporated Contract), Respondents argue that Kindra Lake Towing is at too remote a tier to be a proper claimant under the Bond. Neither the Public Construction Bond Act ("Act"), 30 ILCS 550/1 *et seq.*, nor caselaw applying the Act, ever have held that a claimant at the level of Kindra Lake Towing, a subcontractor to a sub-subcontractor, is too remote to claim, where the bond is more liberal than the Act. In *Aluma Systems*, the claimant was at the same level as Kindra Lake Towing, an equipment lessor to a formwork sub-subcontractor to a concrete subcontractor to a prime contractor. *Aluma Systems*, 206 Ill. App. 3d 828, 830 (1st Dist. 1990). Unlike here, the bond in *Aluma Systems* actually defined a "claimant" as limited to one "having contracts with Principal or which Principal's subcontractor." *Aluma Systems*, 206 Ill. App. 3d at 855. In considering whether a "subcontractor" under the Act was broader than the bond's "claimant" definition, the *Aluma Systems* court noted that "[w]hile the term 'subcontractor' is undefined in the Bond Act, as it is in the Miller Act, there is neither [Illinois] legislative history nor [Illinois] case authority to guide a reviewing court in construing that term." *Aluma Systems*, 206 Ill. App. 3d at 857. Here, the Court has the language of the Bond and the incorporated Contract. They not only guide, but answer, the question of eligible claimants whether a "Subcontractor" or "other person."

*Aluma Systems* rejected the path Respondents ask the Court to follow here. *Aluma*

---

[4] Beyond the inadmissible parol, the Jackson Affidavit and Michael's deposition seem to address, not the Bond, but whether Original Gillen or DLH would provide subcontractor bonds (an otherwise common demand to an unrelated subcontractor by a prime contractor who posts its own bond) and whether DLH would provide an indemnity agreement (a standard requirement of a surety where a subcontractor bond is issued). The discussions prove nothing about the breadth of the Prime Contract Bond itself which was on the Commission's form.

*Systems* declined to follow federal Miller Act cases urged by the surety including *Clifford F.*

*MacEvoy Co. v. United States*, 322 U.S. 102 (1944) because

> "First, authority construing a Federal statute is not binding on the courts of this State in interpreting our legislation. More important, the Miller Act is distinguished from the Illinois Bond Act in a significant respect. The Federal law's legislative history clearly supports the conclusion that Congress intended its protection to extend only to the level of a (third tier) sub-subcontractor, and the *MacEvoy* decision was based in part on that legislative history." *Aluma Systems*, 206 Ill. App. 3d at 856 – 57.

**B.    There Is No Caselaw or Competent Evidence Contradicting Kindra Lake Towing's Invoices Are For Services Covered By This Broad Bond**

1.    **This Broad Bond Covers "Delivery."**    Original Gillen and DLH contend that

"[a] bond claim may not be had for work not consumed in the process of construction." (Original

Gillen/DLH Response at 10 citing *Aluma Systems*, 206 Ill. App. 3d at 858).    What *Aluma*

*Systems* actually said was

> "no Illinois decision has construed the Bond Act, **where the bond itself does not exceed the requirements of the statute,** to guarantee payment for rental fees for equipment or machinery used on a jobsite but not consumed in the process of construction." *Aluma Systems*, 206 Ill. App. 3d at 858 (emphasis added).

*Aluma Systems* did not consider bond language similar to our Bond which expressly covers

"delivery" and payment for "facilities" and "services."

2.    **Respondents Submit No Competent Evidence that Kindra Lake Towing's**

**Services Are Other Than Covered by the Bond**.    John Kindra's Affidavit explained Kindra

Lake Towing's Services and the unpaid invoices for them.    Kindra Lake Towing offered the

deposition of John Kindra, specifically to Sureties, but also to all on the Service List (Kindra Ex.

11).    Respondents chose not to depose him.    Nor did they submit their own Affidavits regarding

Kindra Lake Towing's deliveries of stone to the Project by towing the barges as contemplated by

the Contract incorporated in the Bond.

13

Original Gillen quotes a five-year-old Motion for the proposition that Kindra Lake Towing "predominatly [sic] transported on the open water barges via tug boat from sites outside of Illinois to locations other than [the] Project site." (Original Gillen/DLH Response at 11, Original Gillen/DLH Ex. 5 at 5). But, a Motion is not even a pleading, much less a competent counteraffidavit. And, we know, even pleadings are insufficient to raise a question of fact in the face of an affidavit in support of summary judgment.

Moreover, the Joint Venture's and Sureties' Motion to Dismiss was to Kindra Lake Towing's original Complaint (Original Gillen/DLH Ex. 5). Kindra Lake Towing's Motion is on Count II of Kindra Lake Towing's Second Amended Complaint. Sureties and Joint Venture answered Kindra Lake Towing's Second Amended Complaint. Thus, that Motion is long stale.

Regardless, from "where" to "where" Kindra Lake Towing "predominantly" towed barges is not apparently material to Kindra Lake Towing's bond rights. The Bond speaks of "delivery" and "facilities and services" in "performance of the Principal." That performance can be "in the referenced project are and other miscellaneous work collateral thereto." Respondents' responses never argue why location is material under the language of this Bond where the stone is delivered and then paid as a unit price inclusive of delivery. Nor did Respondents submit any counteraffidavit with particularity that Kindra Lake Towing's invoices were for services ineligible under the Bond.

Original Gillen and DLH did not submit the Affidavit of Roland Schneider cited in the Joint Venture's and Sureties' Motion for the quote from Original Gillen/DLH's Response as part of Respondent's Response to Kindra Lake Towing's Motion. Thus, the Court should not consider it. Regardless, if the Court improperly chose to consider it, the two-paragraph Schneider Affidavit is insufficient under Supreme Court Rule 191. The first paragraph recites

14

Schneider's job title and, *pro forma,* says he has personal knowledge on "most aspects of the Project." The second paragraph is what Original Gillen and DLH quote without attribution.

Affidavits in support of and in opposition to a motion for summary judgment under Section 2-1005(e) of the Code of Civil Procedure must be "as provided by rule." Those affidavits must satisfy Supreme Court Rule 191. The affidavits

> "shall be made on the **personal knowledge** of the affiants; **shall set forth with particularity the facts** upon which the claim, counterclaim or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; **shall not consist of conclusions** but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, **can testify competently** thereto. If all of the facts to be shown are not within the personal knowledge of one person, two or more affidavits shall be used." Illinois Supreme Court Rule 191 (emphasis added).

If the Court believes it is entitled to consider the unsubmitted Schneider Affidavit, it does not raise any fact with particularity and, accordingly, fails Supreme Court Rule 191. The Schneider Affidavit is conclusory, using the adjective "predominately [sic]." "Predominantly" is not "all." The Schneider Affidavit does not state facts with particularity - - it does not address any of the specific invoices of John Kindra's Affidavit with facts. Respondents have not properly raised a material question of fact.

## CONCLUSION

Respondents submitted no competent evidentiary facts to raise a material question of fact. The Bond unambiguously provides that Kindra Lake Towing is a proper claimant. Without those competent evidentiary facts from Respondents, "there is no genuine issue as to any material fact and [Kindra Lake Towing] is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c). Kindra Lake Towing is entitled to Summary Judgment on Count II of its Second Amended Complaint for $882,630.09 in principal and interest through October 12, 2017 of $238,552.20 for a total judgment of $1,121,182.29.

Dated: October 3, 2017

Use Plaintiff, PUBLIC BUILDING
COMMISSION OF CHICAGO for the use
and benefit of KINDRA LAKE TOWING,
LP

By: _____
One of Its Attorneys

John S. Mrowiec
Kenneth A. Cripe
Conway & Mrowiec
20 South Clark Street
Suite 1000
Chicago, IL 60603
(312) 658-1100
Attorney No. 37317
*Attorneys for Use Plaintiff, Public*
  *Building Commission of Chicago f/u/b*
  *Kindra Lake Towing, LP*

## CERTIFICATE OF SERVICE

I, John S. Mrowiec, an attorney, state that I caused to be served an authentic photocopy of Use Plaintiff Kindra Lake Towing's Reply in Support of Motion for Summary Judgment on Count II Against Sureties to be served upon all parties on the attached Service List via electronic mail as indicated by an asterisk or by first class mail, postage prepaid deposited in the U.S. mailbox at 20 South Clark Street before 5:30 p.m. on October 3, 2017.

John S. Mrowiec

Case 2:13-cv-01291-LA   Filed 01/12/18   Page 18 of 23   Document 155-1

| | |
|---|---|
| * A. Jay Koehler<br>Christopher T. Sheean<br>Derrick L. Haddox<br>Swanson, Martin & Bell, LLP<br>330 North Wabash<br>Suite 3300<br>Chicago, IL 60611<br>(312) 321-9100<br>F. (312) 321-0990<br>jkoehler@smbtrials.com<br>csheean@smbtrials.com<br>dhaddox@smbtrials.com<br>*Attorneys for Skipper Marine Development, Inc.* | * Scott R. Halloin<br>Sheila L. Shadman Emerson<br>Charles D. Schmidt<br>Halloin & Murdock, S.C.<br>839 North Jefferson Street<br>Suite 503<br>Milwaukee, Wisconsin 53202<br>(414) 732-2424<br>F. (414) 732-2422<br>shalloin@halloinmurdock.com<br>sshadmanemerson@halloinmurdock.com<br>cschmidt@halloinmurdock.com<br>*Attorneys for Edward E. Gillen Company, DLH Construction and Trucking, Inc., Edward E. Gillen Marine, LLC, Gillen Marine, LLC, Gillen Marine Construction, LLC* |
| * Sophia Moraitis<br>S. Moraitis & Associates<br>333 West Harrison Street<br>Oak Park, Illinois 60304<br>(312) 773-9803<br>F. (312) 276-4212<br>Smoraitis@sma-law.com<br>*Attorneys for Basic Towing, Inc.* | * Thayer C. Torgerson<br>Thayer C. Torgerson Law Office<br>2400 North Western Avenue<br>Suite 201<br>Chicago, Illinois 60647<br>(773) 772-0844<br>Ted@tedtorgersonlaw.com<br>TedTorgerson@hotmail.com<br>*Attorneys for Edward E. Gillen Company* |
| Patrick G. Donnelly<br>Donnelly & Harris, LLC<br>6430 N. Central Ave.<br>Suite 207<br>Chicago, Illinois 60646<br>(312) 564-5210<br>F. (312) 564-5230<br>Pdonnelly@donnellyharris.com<br>Pdonnelly@dlhlawoffices.com<br>*Attorneys for Continental Casualty and Safeco Insurance Company of America* | Brandon G. Hummel<br>Alison M. Finn<br>Riordan-McKee, LLC<br>20 North Wacker Drive<br>Suite 910<br>Chicago, Illinois 60606<br>bhummel@rmp-llc.com<br>afinn@rmp-llc.com<br>(312) 663-9400<br>F. (312) 663-1028<br>*Attorneys for Fidelity and Deposit Company of Maryland* |

| | |
|---|---|
| * Corey B. Stern<br>Chitkowski Law Offices<br>901 Warrenville Road<br>Suite 103<br>Lisle, Illinois 60532<br>(630) 824-4808<br>F. (630) 824-4809<br>cbs@chitkowskilaw.com<br>*Attorneys for Super Excavators, Inc. and Kiel Sand & Gravel, Inc.* | * Ellen B. Epstein<br>Larisa L. Elizondo<br>Burke Burns & Pinelli, Ltd.<br>70 West Madison<br>Suite 4300<br>Chicago, Illinois 60602<br>(312) 541-8600<br>eepstein@bbp-chicago.com<br>Lelizondo@bbp-chicago.com<br>*Attorneys for Paschen Gillen Skipper Marine Joint Venture, F.H. Paschen, S.N. Nielsen & Associates, Continental Casualty Company, Safeco Insurance Company of America, Fidelity and Deposit Company of Maryland, John Sakash Company, Inc., Lannon Stone Products, Inc.* |
| *Adam Toosley<br>Tina Bird<br>Freeborn & Peters LLP<br>311 S. Wacker Drive<br>Suite 3000<br>Chicago, Illinois 60606<br>atoosley@freebornpeters.com<br>tbird@freebornpeters.com<br>*Attorneys for American Marine Constructors, Inc.* | Robert G. Barbour, Esq.<br>C. William Groscup, Esq.<br>Mitchell A. Bashur, Esq.<br>Watt, Tieder, Hoffar & Fitzgerald, LLC<br>1765 Greensboro Station Place<br>Suite 1000<br>McLean, Virginia 22102<br>(703) 749-1000<br>*Attorneys for Paschen Gillen Skipper Marine Joint Venture and F.H. Paschen, SN Nielsen & Associates, LLC* |
| Edward L. Filer, Esq.<br>Brian Bedinghaus, Esq.<br>Roetzel & Andress, LPA<br>20 South Clark Street<br>Suite 300<br>Chicago, Illinois 60603<br>efiler@ralaw.com<br>bbedinghaus@ralaw.com<br>(312) 580-1200<br>F. (312) 580-1201<br>*Attorneys for Central Boat Rentals, Inc.* | Dennis Minichello<br>Michael D. Reed<br>Marwedel, Minichello & Reeb, P.C.<br>303 W. Madison<br>Suite 1100<br>Chicago, IL 60606<br>(312) 902-1600<br>dminichello@mmr-law.com<br>mreed@mmr-law.com<br>*Attorneys for Kindra Lake Towing, LP, solely for defense as Counter-Defendants to Second Amended Counterclaims, and Kokosing Construction Company, Inc., as Counter-Defendants only* |

| | |
|---|---|
| * Robert Nienhuis, Esq.<br>Goldstein and Price, L.C.<br>One Memorial Drive<br>Suite 1000<br>St. Louis, Missouri 63102<br>robert@gp-law.com<br>kayla@gp-law.com<br>(314) 516-1700<br>F. (314) 421-2832<br>*Attorneys for Kindra Lake Towing in defense of Second Amended Counterclaims and Intervenor Complaint* | Cornelius F. Riordan<br>Harold E. McKee<br>Schuyler Roche & Crisham, P.C.<br>Two Prudential Plaza<br>180 North Stetson Avenue<br>Suite 3700<br>Chicago, Illinois 60601<br>criordan@srcattorneys.com<br>hmckee@srcattorneys.com<br>(312) 656-2400<br>F. (312) 565-8300<br>*Attorneys for North American Stevedoring Co., by its assignee, the Paschen/Gillen/Skipper Marine Joint Venture; Kokosing Construction Co., Inc., Durocher Marine Division, by its assignee, the Paschen/Gillen/Skipper Marine Joint Venture; Pere Marquette Shipping Co., by its assignee, the Paschen/Gillen/Skipper Marine Joint Venture* |

## Faley, Michael J.

**From:** Faley, Michael J.
**Sent:** Thursday, January 11, 2018 3:30 PM
**To:** 'Mark Bell'
**Cc:** Kinsella, Daniel V.; Hormozi, Brian
**Subject:** Summit v. Walsh -- Upcoming Deps

**PRIVILEGED AND CONFIDENTIAL**

Hi Mark,

At the upcoming depositions, you, Brian and KC will each be asked if you are in possession any handwritten documents, notes or other personal papers concerning, for example, anything to do with Peggy Walsh's transition to Pinnacle, anything to do with BlueStone, or any other non-privileged documents that you might recognize as relevant to the litigation but which were not provided to Dan or me for production in discovery. I know we've talked about discovery production at length over time and I'm 99% certain that all of the pertinent materials have been provided.  Nonetheless, please confirm for me and double check your personal files (including computer desktop) if necessary to verify that you're not aware of us overlooking anything. For example, I presume there is no file in your office or your computer desktop called "Marks Notes on Peggy Walsh" or "Marks Notes on BlueStone".   At the deposition, we want you to be able to state that you've done a reasonable search for any such records and you are not aware any records except what's already been produced by Harbor Bay.

I need KC, Brian and Kevin to each likewise confirm the same and double check their paper files and computer desktop if necessary.

I apologize if this sounds sort of vague.  Please let me know if you have any questions or would like me to further clarify what I'm asking of you.

Thank you.

Best,
Mike

**Michael J. Faley**
Attorney at Law
MFaley@SRCattorneys.com
312.565.8377 TEL | 312.565.8300 FAX

Schuyler
Roche    ATTORNEYS
Crisham

Schuyler, Roche & Crisham, P.C
Two Prudential Plaza, Suite 3700
180 N Stetson Avenue
Chicago, IL  60601
www.SRCattorneys.com