# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

FIDELITY AND DEPOSIT COMPANY
OF MARYLAND,
        **Plaintiff,**

     **v.**                          **Case No. 13-C-1291**

EDWARD E. GILLEN COMPANY, et al.,
        **Defendants.**

_____

## DECISION AND ORDER

In 2010, defendant Edward E. Gillen Company ("Gillen"), a marine construction firm, became part of a joint venture with other companies. The Public Building Commission of Chicago selected the joint venture as the general contractor for a harbor construction project, which the parties refer to as the "31st Street Harbor Project." The plaintiff here, Fidelity & Deposit Company of Maryland ("F&D"), issued a surety bond to ensure the joint venture's performance. The amount of the bond is more than $30 million.

To complete the project, the joint venture subcontracted some of the construction work to Gillen. Gillen, in turn, entered into agreements with other subcontractors, who supplied labor and materials. F&D alleges that, in 2012, Gillen defaulted on its obligations by failing to pay the subcontractors. Following the default, the unpaid subcontractors filed at least seventeen separate lawsuits against Gillen in the Circuit Court of Cook County. F&D, as the surety, was named as a defendant in each of the suits. Many of those suits have since been resolved. However, several suits remain

pending, and F&D alleges that the remaining plaintiffs in those suits claim that Gillen owes them a total of $2,563,207.96.

F&D commenced this action against Gillen and other defendants in 2013, alleging that the defendants had breached various obligations to protect F&D as the surety for the 31st Street Harbor Project. Since then, the parties have settled a large portion of the case, including all claims against the defendants other than Gillen. The sole remaining claim is F&D's claim against Gillen based on the equitable doctrine of *quia timet*. The parties have filed cross-motions for summary judgment on this claim, which I address in this order.

*Quia timet* is a somewhat obscure equitable doctrine that applies in the suretyship context, along with the doctrines of exoneration and reimbursement. All of these doctrines relate to a surety's right to require the principal obligor (which in this case is Gillen, as one of the parties to the joint venture) to perform the underlying obligation. *See* Peter A. Alces, *The Law of Suretyship and Guarantee* § 6:6 (Westlaw 2018). The doctrine that applies depends on the timing of the surety's action. Reimbursement, as the name implies, is asserted after a surety has already made payments under the bond. *See id.* § 6:13. But the law does not require a surety to wait until it has made payment to seek relief against the principal, and this is where the doctrines of exoneration and *quia timet* step in. *See Admiral Oriental Line v. United States*, 86 F.2d 201, 204 (2d Cir. 1936) (a surety "is not obliged to make inroads into his own resources when the loss must in the end fall upon the principal"). The doctrine of exoneration applies at the time when the performance of the underlying obligation is due, but has not been paid. *See* Alces, supra, § 6:13. In an action for exoneration, a

surety seeks to compel the principal to satisfy the obligation before the creditor calls upon the surety to do so. *See Dobie v. Fid. & Cas. Co. of New York*, 95 Wis. 540, 483 (1897) ("It seems to be well settled that a surety against whom a judgment has been rendered may, without making payment himself, proceed in equity against his principal to subject the estate of the latter to the payment of the debt, in exoneration of the surety."). *Quia timet*, in contrast, is available to the surety before payment of the underlying obligation is even due. *See* Alces, supra, § 6:13. In general, an action for *quia timet*, which is Latin for "because he fears," can be brought when the surety fears that the principal will not perform the obligation when it comes due. The object of a claim for *quia timet* is to require the principal to provide cash collateral to the surety to secure the principal's future performance. *See Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 32 (2d Cir. 1991) ("*Quia timet* is the right of a surety to demand that the principal place the surety 'in funds' when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor.").

In the present case, F&D pleaded claims for both exoneration and *quia timet*. *See* Third Am. Compl., Count IV, ECF No. 98. However, in one of its summary-judgment briefs, F&D states that it is no longer seeking exoneration. Br. in Supp. of Cross-Mot. for Summ. J. at 9, ECF No. 150. Thus, the only question remaining is whether F&D is entitled to the equitable remedy of *quia timet*.

In seeking *quia timet*, F&D contends that it reasonably fears having to pay, at some point in the future, more than $2 million to Gillen's subcontractors. F&D believes that when Gillen's liability to the subcontractors is finally determined, Gillen will be

unable to pay the amounts owed because it is insolvent and, as of February 2012, "had no assets." *See* Reply Br. at 9, ECF No. 155; *see also* Br. in Supp. at 6–8 (identifying facts suggesting that Gillen is insolvent and cannot pay the underlying obligations). But if F&D is correct, then it would be impossible for Gillen to now provide F&D with the collateral it seeks, namely, "$2,349,582.97 in cash or cash equivalents." Cross-Mot. for Summ. J. at 1, ECF No. 146. Simply put, if Gillen has no asserts and cannot now pay the amounts that it will eventually owe to the subcontractors, then it is too late for F&D to obtain *quia timet*, as the whole point of the doctrine is to prevent a principal from absconding with cash that it *currently* has. *See, e.g., Escrow Agents' Fid. Corp. v. Superior Court*, 4 Cal.App.4th 491, 496 (1992) (stating that purpose of *quia timet* is to prevent the principal from "abscond[ing] with the very funds which could have been used to satisfy the bond").

F&D has not explained how it expects a company with no assets to pay more than $2 million in cash. Perhaps F&D suspects that Gillen has the ability to post the collateral. But if that is so, then how could F&D reasonably fear that Gillen will not pay the obligations when they are due? F&D does not point to any facts suggesting that Gillen is in the process of depleting its assets, or that, once the smoke clears in the Illinois litigation, Gillen will refuse to pay the subcontractors what they are owed. F&D's only stated concern is that Gillen is broke and therefore can't pay the subcontractors. But if Gillen is broke, then *quia timet* is not an available remedy. Accordingly, F&D is not entitled to relief.

For the reasons stated, **IT IS ORDERED** that Gillen's motion for summary judgment (ECF No. 136) is **GRANTED**.

**IT IS FURTHER ORDERED** that F&D's motion for summary judgment (ECF No. 146) is **DENIED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 23rd day of April, 2018.


s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge